IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASIA GAINES, for herself and as next friend of her minor child, "JC," </br></br>Plaintiffs, </br></br>v. </br></br>THE CHICAGO BOARD OF EDUCATION, KRISTEN A. HAYNES, and JUANITA TYLER, </br></br>Defendants. | Case No. 19 C 775 </br></br>Judge John Z. Lee |

## MEMORANDUM OPINION & ORDER

Plaintiff Asia Gaines, on behalf of herself and her minor child, "JC," filed this lawsuit against the Chicago Board of Education ("the Board"), Kristen A. Haynes, and Juanita Tyler, alleging federal and state claims relating to JC's treatment at George W. Tilton Elementary School on September 20, 2018. The Board has filed a motion to dismiss the complaint's allegations against the Board contained in Counts I and IV through X. For the reasons stated herein, the Board's motion is granted in part and denied in part.

### Background[1]

On the morning of September 20, 2018, nine-year-old JC walked toward his classroom in George W. Tilton Elementary School and noticed his teacher, Haynes,

---

[1] The following facts are taken from Gaines's amended complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

and an unknown woman, Tyler, standing by the door. Am. Compl. ¶ 39, ECF No. 23. The day before, Haynes had invited Tyler—who is unaffiliated with the school and, then unbeknownst to JC, is JC's paternal great aunt—to come to the school and punish JC for being disruptive in class. *Id.* ¶¶ 30–32. Tyler was not listed as JC's emergency contact at the school and was not otherwise authorized to have any contact with him. *Id.* ¶ 33. No one from the school notified JC's parents that Tyler had been asked to come, or would be coming, to the school. *Id.*

As JC walked past Haynes and Tyler on his way to the classroom, Tyler grabbed and stopped him. *Id.* ¶ 40. Tyler eventually slapped JC in the mouth twice, with Haynes and Tyler then lifting him off his feet by his wrists and carrying him down the hallway to the boy's bathroom. *Id.* ¶¶ 43–47. In the bathroom, Tyler, using two large belts Haynes had provided her, struck JC approximately 20 to 30 times on his back, left shoulder, buttocks, and the back of his right leg. *Id.* ¶¶ 50–57. She also slapped JC on the mouth for a third time. *Id.* ¶ 58. Though JC was fully clothed, Tyler's strikes broke the skin on his back and left red abrasions and red areas on other parts of his body. *Id.* ¶ 60.

As a result of the incident, JC has twice been diagnosed with post-traumatic stress disorder. *Id.* ¶ 87. He has undergone and continues to undergo extensive psychological evaluation and is expected to require extensive, long-term psychotherapy. *Id.* Among other negative developments, JC has been unable to fall asleep until 1:00 am or 2:00 am each night—saying that he is too scared to go to

sleep—and consequently is constantly tired and has difficulty concentrating. *Id.* ¶¶ 90–92.

Gaines, on behalf of herself and JC, has filed a ten-count amended complaint against Haynes, Tyler, and the Board. Specifically, Gaines asserts a *Monell* claim against the Board (Count I) and two claims under 42 U.S.C. § 1983 against Haynes (Counts II and III). Gaines also asserts several state law claims, including assault against Haynes, Tyler, and the Board (Count IV); battery against Haynes, Tyler, and the Board (Count V); intentional inflection of emotional distress ("IIED") against Haynes, Tyler, and the Board (Count VI); aiding and abetting against Haynes and the Board (Count VII); civil conspiracy against Haynes, Tyler, and the Board (Count VIII); *respondeat superior* against the Board (Count IX); and indemnification against the Board (X).

The Board moves to dismiss the claims against it, namely those in Counts I and IV through X. *See* Mot. to Dismiss, ECF No. 26.

## **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this way, the complaint must put the defendants on "fair notice of what the . . . claim is

and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

**I.  Gaines's personal claims against the Board.**

With respect to Counts I and IV through VIII, the Board first argues that Gaines cannot *individually* sustain those claims against the Board, as those counts allege injuries to JC, not Gaines. *See* Mot. to Dismiss at 4–5; *id.* at 5 ("Plaintiff Asia Gaines does not have standing to bring claims for herself because the Complaint does not allege that she suffered an injury in fact that can be fairly traced to the defendant." (internal quotation marks omitted)).

The Court agrees that Counts I and IV through VIII (*Monell*, battery, assault, IIED, aiding and abetting, and civil conspiracy) do not allege, let alone plausibly allege, any actions directed at Gaines. While Gaines responds by arguing that she has suffered emotional and economic injury as a result of Haynes's and Tyler's

conduct toward JC—by, for instance, having to "expend[] significant time and money in order to provide for [JC]'s medical and psychological care," Resp. to Mot. to Dismiss at 20, ECF No. 51—she does not tie those injuries to the actual claims alleged in Counts I and IV through VIII or otherwise argue in any detail that her alleged injuries permit her to adequately plead those specific claims on an individual basis. Gaines does not, for example, explain how the fact that her son allegedly received unauthorized, harmful physical contact enables her to personally bring a battery claim against the Board (Count V)—as opposed to one on behalf of her son—even if she has been forced to pay certain expenses as a result of that physical contact.[2]

## II. Gaines's *Monell* claim.

The Board next argues that Gaines fails to state a *Monell* claim against the Board. *See* Mot. to Dismiss at 5–8. Municipalities, government agents, or policymaking individuals may not be held liable under Section 1983 through a *respondeat superior* theory but may be held liable for constitutional deprivations pursuant to governmental custom. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).

In order to establish liability under *Monell*, a plaintiff must demonstrate: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th

---

[2] Illinois law does allow a parent to recover medical costs incurred as a result of a child's injuries, 750 ILCS 65/15, but Plaintiff has not asserted such a claim.

5

Cir. 2009) (quoting *Estate of Sims ex rel. Sims v. Cnty. Of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)).

Gaines has adequately stated a *Monell* claim. In particular, Gaines alleges that the injuries JC suffered resulted from a "widespread practice"—"failing to adequately investigate, intervene with and discipline or otherwise correct teachers . . . when they use or threaten to use unreasonable or excessive corporal punishment," Am. Compl. ¶ 126—"that is so permanent and well-settled that it constitutes a custom or practice," *Waters*, 580 F.3d at 581. While the Board states that plaintiffs "must do more than allege one incident in order to establish a *Monell* claim under the *de facto* policy theory," Mot. to Dismiss at 6, Gaines does more than conclusorily assert that the incident involving JC was the result of a *de facto* policy. Rather, Gaines also cites to a 2009 investigative report documenting many sustained allegations of school beatings at Chicago Public Schools—including those specifically involving belts and other similar implements—and noting that relatively few staff were terminated in response. *See* Am. Compl. ¶ 127; Dave Savini, *George Tilton Elementary School Student: I Was Beaten With A Belt*, CBS CHICAGO, Feb. 6, 2019, https://chicago.cbslocal.com/2019/02/06/george-tilton-elementary-school-student-beaten-belt; *see also Simpson v. Ferry*, 202 F. Supp. 3d 444, 448 (E.D. Pa. 2016) (relying partly on news articles attached to the complaint to conclude that a *Monell* claimant had plausibly alleged a municipal custom of tolerating excessive force). Though the report is a decade old, it apparently is the most recently available information regarding allegations of student mistreatment at Chicago Public Schools and the Board's

6

actions in response. *See George Tilton Elementary School Student: I Was Beaten With A Belt* ("Sustained complaints totaled 568, but only 24 CPS staff were terminated. *The CBS 2 Investigators repeatedly asked CPS for recent numbers but were told the statistics are no longer tracked that way.*" (emphasis added)).

Furthermore, the amended complaint contains other facts that support the existence of a *de facto* policy of failing to adequately investigate and discipline when staff beat or threaten to beat students. For instance, the amended complaint alleges that Haynes "had a history of engaging in corporal punishment with her students" and "regularly threatened numerous other students to 'pull out the belt' and use it on them," which Tilton principal Sylvia Yvette Hodge "was well-aware of." Am. Compl. ¶¶ 21–24. Nevertheless, the amended complaint continues, Haynes "had not been disciplined in any way for administering previous 'whoopings' or threats of whoopings with her belts." *Id.* ¶¶ 22–24. Relatedly, the amended complaint also alleges that Haynes, in the presence of Gaines and Hodge, once opened a classroom closet containing two large belts and told Gaines that "[i]f you ever want to whip [JC]'s butt, I got something for you." *Id.* ¶ 27. Hodge allegedly did not correct Haynes's statement or say anything else in response. *Id.* ¶ 28.

In sum, the Court concludes that Gaines has adequately pleaded a *Monell* claim against the Board by alleging a widespread Board practice of failing to investigate and discipline staff when they beat students; by citing to a relevant study that suggests inadequate disciplining of staff who beat students; and by pleading other facts consistent with a practice of looking the other way in the face of school

7

beatings. This is enough to provide the Board "fair notice of the [*Monell*] claim and ground on which it rests." *Cornielsen v. Infinium Capital Management, LLC*, 916 F.3d 589, 598 (7th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 672); *see also Garcia v. M.T. Food Serv., Inc.*, 13 C 07485, 2014 WL 6461937, at *1 (N.D. Ill. Nov. 17, 2014) ("The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint.").

### III. The Board's liability for intentional torts alleged in the amended complaint.

The Board next contends that the intentional torts listed in Counts IV through VIII, which includes assault, battery, IIED, aiding and abetting, and civil conspiracy, should be dismissed as to it. *See* Mot. to Dismiss at 8–9. The Court agrees. As the Board argues, the amended complaint does not contain sufficient facts to support Plaintiff's theory that the Board is directly liable for the intentional torts in those counts. Accordingly, the only basis for holding the Board liable for those torts is *respondeat superior* and indemnification, which are already pleaded in Counts IX and X. *See Horton v. City of Chicago*, 13 C 6865, 2016 WL 4945014, at *4 (N.D. Ill. Sept. 15, 2016) (dismissing civil battery claim against employer because there were no allegations in the complaint to suggest the employer was directly liable for battery; "the only basis for holding [the employer] liable for battery is *respondeat* superior, which Plaintiff already alleges as a standalone claim.").

## IV. Gaines's *respondeat superior* claim.

### A. The Board's vicarious liability for Haynes's actions.

The Board further contends that it cannot be held responsible under *respondeat superior* (Count IX) for Haynes's alleged conduct toward JC because that conduct was not plausibly within the scope of her employment with the Board. *See* Mot. to Dismiss at 10–13. The Board is incorrect.

Under Illinois *respondeat superior* law, "an employer may be liable for the 'negligent, willful, malicious or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer.'" *Stern v. Ritz Carlton Chicago*, 702 N.E.2d 194, 196 (Ill. App. Ct. 1998) (quoting *Deloney v. Board of Education*, 666 N.E.2d 792, 798 (Ill. App. Ct. 1996)). Relatedly, an employee's actions fall within the scope of employment if "(a) it is the kind [s]he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, *at least in part*, by a purpose to serve the master." *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989) (emphasis added); *see also Sunseri v. Puccia*, 422 N.E.2d 925, 930 (Ill. App. Ct. 1981) ("If an employee commits an intentional tort with the dual purpose of furthering the employer's interest and venting personal anger, *respondeat superior* may lie.").

Here, the amended complaint adequately alleges that Haynes's conduct of arranging for JC's beating and then participating in that beating was within the scope of her employment with the Board. Specifically, the amended complaint suggests that Haynes's actions were tied, at least in part, to the school objective of

9

maintaining discipline of her students. *See* Am. Compl. ¶ 188 ("Ms. Haynes and Ms. Tyler had a lawful purpose, school discipline, but the means they used to achieve their purpose . . . went beyond the bounds of lawful activity."); *id.* ¶ 66 (alleging that, following the beating, Haynes warned JC to improve his classroom behavior or else Tyler would further beat him in the afternoon); *see also id.* ¶¶ 16, 19, 26, 29, 30, 59, 69, 108, 112, 115, 121.

Although the Board does not contest that Haynes was professionally "authorized, indeed commanded, to maintain discipline of her students," Reply in Support of Mot. to Dismiss at 10, ECF No. 55 (quoting Resp. to Mot. to Dismiss at 11), it contends that the form of discipline administered by Haynes was beyond the scope of her employment, given that corporal punishment is prohibited by the State of Illinois and the Board. *See* Mot. to Dismiss at 12–13. However, the scope of employment includes acts that "may be regarded as methods, even though quite improper ones, of carrying out the objective of the employment." *Coleman v. Smith*, 814 F.2d 1142, 1149 (7th Cir. 1987) (internal quotation marks omitted); *see also* Restatement (Second) of Agency § 230 (1958) ("An act, although forbidden, or done in a forbidden manner, may be within the scope of employment"). For example, a dramshop keeper may be liable under *respondeat superior* for a bouncer's use of excessive force against a patron even if the keeper did not authorize the bouncer to use such force. *See, e.g.*, *Sunseri*, 422 N.E.2d at 930.

The Board's reliance on *Doe v. Woodridge Elementary School District No. 68 Board of Education*, No. 4 C 8250, 2005 WL 910732 (N.D. Ill. Apr. 13, 2005), and *Doe*

10

*v. Sperlik*, No. 5 C 1277, 2005 WL 3299818 (N.D. Ill. Nov. 30, 2005), is misplaced. Those cases, unlike here, each involved teachers who sexually abused students. *See Woodridge Elementary*, 2005 WL 910732, at *1; *Sperlik*, 2005 WL 3299818, at *1. Such behavior cannot be said to have any conceivable connection to discipline or any other school objective, *see, e.g.*, *Sperlik*, 2005 WL 3299818, at * 3 ("Illinois has consistently held that acts of sexual misconduct are *per se* unrelated to any employer's business.").

### B. The Board's vicarious liability for Tyler's actions

The Board also argues that Gaines has not stated a *respondeat superior* claim against the Board with respect to Tyler's conduct, because Tyler was neither a Board employee nor its agent at the time she allegedly beat JC. *See* Mot. to Dismiss at 9–10. This is correct.

Establishing *respondeat superior* requires, *inter alia*, "a showing that . . . a principal/agent, master/servant, or employer/employee relationship existed." *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (Ill. 2012). Gaines does not allege that Tyler was an employee or direct agent of the Board. Rather, and for the first time in her response to the motion to dismiss, Gaines argues that Tyler was acting as the Board's sub-agent when she beat JC. *See* Resp. to Mot. to Dismiss at 18; Restatement (Third) of Agency § 3.15 (1) (2006) ("A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal.").

11

But, "[g]enerally, an agent cannot delegate his authority and have the services performed by a sub-agent without express permission from the principal unless the permission can be implied from the nature of the business or custom." *Cnota v. Palatine Area Football Ass'n*, 592 N.E.2d 196, 201 (Ill. App. Ct. 1992); Restatement (Third) of Agency § 3.15 (2) ("An agent may appoint a subagent only if the agent has actual or apparent authority to do so."). Here, Plaintiff does not allege that the Board expressly permitted Haynes to appoint a sub-agent for disciplining students, nor does she present any facts to support the inference that the Board implicitly authorized Haynes to delegate a sub-agent for the Board. And while Gaines argues that it is possible that "Haynes had or believed she had actual or apparent authority from the Board to engage Tyler," Resp. to Mot. to Dismiss at 19, the relevant question is whether Gaines's *respondeat superior* claim "is not merely possible but *plausible* on its face." *Usher v. United States, Dept. of Navy*, No. 17 C 8052, 2019 WL 978664, at *1 (N.D. Ill. Feb. 28, 2019) (citing *Iqbal*, 556 U.S. at 678); *see also Twombly*, 550 U.S. at 555 (stating that, to survive a 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief *above the speculative level*" (emphasis added)).

Furthermore, while Gaines notes in passing that "an agent may delegate to a subagent the performance of incidental mechanical and ministerial acts without authorization from the principal," Resp. to Mot. to Dismiss at 18; *see AYH Holdings, Inc. v. Avreco, Inc.*, 826 N.E.2d 1111, 1127 (Ill. App. Ct. 2005), she offers no argument, nor does the amended complaint allege or suggest, that the disciplining of students is an "incidental mechanical and ministerial act[]." Finally, Gaines also notes in

passing that "one who volunteers services without an agreement for or expectation of reward . . . may be a servant of the one accepting such services."  Resp. to Mot. to Dismiss at 18 (citing Restatement (Third) of Agency § 225).  But she does not explain how this principle demonstrates that Tyler was the Board's agent or sub-agent, rather than an agent of Haynes.

## Conclusion

For the foregoing reasons, the Board's motion to dismiss is granted in part and denied in part.  Gaines's claims against the Board on her own behalf are dismissed.  Additionally, the intentional tort claims asserted against the Board in Counts IV through VIII and the *respondeat superior* claim in Count IX, to the extent it is based upon Tyler's conduct, also are dismissed.  However, the motion to dismiss is denied with respect to the *Monell* claim in Count I and the *respondeat superior* claim in Count IX as it relates to Haynes's conduct.

**IT IS SO ORDERED.**  ENTERED: 3/12/20

_____
**John Z. Lee
United States District Judge**