**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ASIA GAINES, for herself and as next friend of her minor child, "JC," | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 19-cv-00775 |
| v. | ) ) | Judge John Z. Lee |
| THE CHICAGO BOARD OF EDUCATION; KRISTEN A. HAYNES; and JUANITA TYLER, | ) ) ) ) | Magistrate Sheila M. Finnegan |
| Defendants. | ) ) | **Jury Demand** |

<u>PLAINTIFFS' MOTION TO COMPEL</u>

Plaintiffs respectfully move this Court for an Order compelling defendant

Chicago Board of Education to produce with seven (7) days: 1) the full names and complete,

current contact information of the occurrence eyewitnesses below who have information and

testimony that is directly relevant to plaintiffs' claims and defendants' defenses and 2) an

unredacted copy of the Chicago Public School's investigator's report. In support of these

motions, plaintiffs state as follows:

**I.     INTRODUCTION**

On September 20, 2018, nine-year-old plaintiff JC was repeatedly whipped by

defendant Tyler with two belts in the boys' bathroom across from his fourth grade classroom.

(Amended Complaint ("AC")). His fourth grade teacher, defendant Haynes, provided the belts

to Tyler. (AC and witness testimony below). Haynes maintained the belts in her classroom

closet for the purpose of threatening her students. (Id.). After providing the belts to Tyler,

Haynes then physically helped pull and drag JC down the hallway, unlocked the boys' bathroom

door, and left Tyler alone in the bathroom with JC and walked back to her classroom. (Id.). Tyler then whipped JC repeatedly.

As part of their investigation, both Board's own internal investigator and, separately, two Chicago police detectives interviewed multiple students who were present in Haynes' classroom at the time of the incident on September 20, 2018. (Exhibit A, 177-178 and 188-191; Exhibit B, 13-14). From these investigators' reports, it is clear these students have information and testimony that is directly relevant to plaintiffs' claims and all defendants' defenses. (Id.). But because that information and testimony is highly incriminating to defendant Haynes and the Board, the Board failed to identify those witnesses in any manner in its MIDPs and amended MIDPs, as required, and completely redacted their names, their parents' names and contact information in the documents it produced to plaintiffs, even though the Board marked those documents confidential pursuant to the protective Order in this case. Even when the Board amended its MIDPs in February, 2020, and even after recent LR 37.2 consultations, instead of providing the names and contact information so that plaintiffs can interview and/or depose the witnesses, defendants continue to obstruct the discovery of this information and testimony that is obviously vital to plaintiffs' case.

## II.     APPLICABLE STANDARDS OF LAW

The federal notice pleading system contemplates that parties will have broad and liberal discovery to investigate the facts and help define and clarify the issues. *Swierkiewicz v. Sorema, N. A.*, 534 U. S. 506, 512 (2002); *Oppenheimer Fund, Inc. v. Sanders*, 437 U. S. 340, 251 (1978); *see also Kodish v. Oakbrook Terrace Fire Dist.*, 235 F.R.D. 447, 450 (N. D. Ill. 2006). Federal Rule of Civil Procedure 26(b)(1) provides:

> **Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the**

> **case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.**

Fed. R. Civ. Pro. 26(b)(1). Moreover, "information within this scope of discovery need not be admissible in evidence to be discoverable." Id. The Supreme Court has interpreted relevance broadly to include any matter that "bears on" or that "reasonably could lead to other matter that could bear on" any material facts or issue in the action. *Oppenheimer,* 437 U. S. 340 at 351. Therefore, "[in] ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules," and "Courts commonly look unfavorably upon significant restrictions placed upon the discovery process." *Kodish v. Oakbrook Terrace Fire Prot. Dist*., 235 F. R. D. at 450. Moreover, "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Parvati v. Oak Forest*, 2010 WL 2836739, at *1 (N. D. Ill. July 19, 2010).

This Court's Amended Standing Order Regarding Mandatory Initial Discovery Pilot Project required the parties to state the names and contact information of all persons believed to have discoverable information "relevant to any party's claims" and to provide a description of the nature of the information each person is believed to possess. (At 4). The Order emphasizes that "parties must provide the requested information as to facts that are relevant to the parties' claims or defenses, whether favorable or unfavorable, and regardless of whether they intend to use the information in presenting their claims or defenses." (Id. at 2).

## III.    RELEVANT FACTS AND THE PARTIES' LR 37.2 CONSULTATIONS

The 17-page, internal investigative report prepared on CPS letterhead by the Board's own investigative entity concluded that credible evidence existed to support a number of

specific findings, including these: 1) Haynes asked Tyler to come to school and discipline JC; 2) Haynes provided Tyler with a belt to whip JC; 3) Tyler took JC into the bathroom at school and whipped him hard about 12 times on the back and legs 4) after Haynes escorted them to the bathroom and unlocked the door; and 5) Haynes more than once provided false information about what actually happened. (Exhibit A at 191).

       The CPS investigator's findings relied, in part, on her interviews with eight students of Haynes' fourth grade class. (Exhibit A at 178, 188-191). Most of these students were present in Haynes' classroom on the day and at the time of the incident, as well as on other days when they heard Haynes threaten her class with the two belts that she kept hanging in her classroom closet. (Id.). For example, the investigator's report indicates that the following students made the following statements to the CPS investigator in their interviews with her:

- "Eric" said that on the incident date Tyler came to the class and whipped JC in the boys bathroom and that, when he returned to class, JC's face was red and his eyes were watery [Haynes and Tyler say JC was smiling and laughing when he returned to class]. (Id. 188-189). Eric also stated that in September of 2018 Haynes showed the class the belts in the closet, told the class the belts' names, and told them that she will call the parents to have the parents come to school and whip the kids. (Id. 188);

- "RJ" said he saw Haynes give the belts to Tyler, saw Tyler and standing in the classroom doorway, saw the classroom closet open, heard JC's screams in the boys' bathroom [Haynes and Tyler deny hearing screams and deny he was screaming], and saw tears in JC's eyes when JC returned to class. (Id. 189). RJ knows of another student that was "whooped" with the belts. (Id.). RJ heard

Haynes threaten her students with the belts at other times. (Id.). RJ said his mother did not give Haynes authority to "whoop" him. (Id.).

- SC stated that she has seen the belts and that Haynes "calls the parents and asks if she has permission to whip the kids if they are bad in class" [Haynes claims the belts were there just to scare the kids and that she offered them to the parents to use]. (Id. 189);

- DN stated that he/she has seen one of the belts and that Haynes calls the parents of the kids who are bad and asks if they want the belts to be used on the kids (Haynes "wanted permission"). (Id. 189);

- AB stated that she saw Haynes take JC to the bathroom [Haynes disputes this happened] and that JC's face was red. (Id. 190). AB also said there are two, long and thick belts, black and brown. (Id.).

- KB/KE stated that Haynes would take a male student into the bathroom and scare him with the belts and that she got the mother's permission. (Id. 190). She also gave the names of the belts, "Mr. Brown and Mr. Black."

In addition to her interviews with these students, the CPS investigator interviewed in depth at least one other student in Ms. Haynes class, "K," who made detailed statements as follows:

- Haynes keeps two long belts, one black and one brown, hanging on a hook on the inside of the closet door next to the front door of the classroom;

- During the first week of school in September, 2018, Haynes told the class the belts are for students who are not good and for parents to whip their children;

- Haynes never said the belts are for students whose pants were sagging [Haynes told this to the investigator, but, as Detective Casanova testified, the belts are adult size belts];

- On September 20, 2018, Haynes would not allow JC to enter the classroom;

- On September 20, 2018, Haynes walked with JC towards the bathroom then quickly returned to the classroom [Haynes denies ever walking to the bathroom with Tyler and JC and unlocking the bathroom door for them); and

- JC was crying when he returned to the classroom and wiped his face before sitting down.

(Exhibit A at 178).

In addition, several of Haynes' students were also promptly interviewed by two CPD detectives, Casanova and Diaz, with the assistant principal present. On the basis of these and other interviews as well as physical evidence, the detectives concluded there was sufficient evidence to charge both Tyler and Haynes with battery and endangerment against JC. (Exhibit B). The detectives' 18-page investigative report summarizes each witnesses' *verbatim* statements (- Casanova testified at her deposition on 3/22/21 that she took *verbatim* notes of each witness' statements during the witness interviews, then copied her notes into the report attached in Exhibit B). (Id.). The report indicates that the following students made the following statements to the detectives during the interviews:

- JPL stated that on the first day of school Haynes open the classroom closet door and showed the class two leather belts that hung on the closet door and said, "if you are bad, I got permission from the parents to use them in you...." (Exhibit B at 14). She also said that the brown belt was named Mrs. Brown and the black

belt, Mrs. Black, and that Haynes also said that if the students were really bad she would bring the long belt from home called Mr. White.  (Id.).

- KB (a male) stated that Haynes told the class that if they are bad she will call the parents or guardian and also said she had permission to pop them with the belts.  (Exhibit B at 14).

- KB (a female) stated that on the incident date she saw a part of a belt when Haynes got it out of the closet for the parent to use on a student.  (Exhibit B at 14).  She also said Haynes has the belts that she keeps in the classroom closet and provides to the parents.  (Id.).

(Exhibit B).[1]

This is an MIDP case.  The Board made MIDP disclosures on June 21, 2019, long after its internal investigation was completed and the investigative report was issued on February 4, 2019.  (Exhibit C; Exhibit A at 174).  The Board's initial MIDP disclosures are attached hereto as Exhibit C.  On February 22, 2019, the Board amended its MIDP disclosures; the Board's amended MIDP disclosures are attached as Exhibit D.  In addition, Haynes made her MIDP disclosures on June 18, 2019, and has not amended them.  A copy of Haynes' MIDP disclosures are attached as Exhibit E.  In their MIDP disclosures, no defendant identifies any of the students who are occurrence witnesses to the events in this case.

When it produced documents in this case, the Board produced a copy of the CPS investigator's report that had all of the student witnesses' names and their parents' names and personal information redacted so that plaintiffs could not see it, even though this Court had

---

[1] CPS' investigator also interviewed the assistant principal who was present during the detectives' interviews with the students above.  The assistant principal noted that the CPD detectives had asked two, open-ended questions of each student:  How is discipline handled in Ms. Haynes' classroom?  Do you know anything about belts?  (Exhibit A at 177).

entered a Protective Order and the Board had marked the report as confidential.  (<u>Exhibit</u> A, 177-178, 188-191).

Beginning on March 1, pursuant to LR 37.2 plaintiffs requested that the Board identify the names of the students and their parents/guardians and provide the parents'/guardians' current contact information, so that plaintiffs can interview and/or depose them.  (Emails between plaintiffs' and defendant' counsel attached as <u>Exhibit F</u>).  Plaintiffs pointed out that defendants had not disclosed these students or their parents as witnesses in their MIDPs.  (Id.).  Plaintiffs offered to agree to an additional court Order to protect the names and contact information.  (Id.).  In subsequent emails, plaintiffs also explained the relevance of these students/parents' testimony, even though the relevance is obvious to any thinking person.  (Id.).  Plaintiffs even narrowed the number of students/parents for whom they are seeking names and contact information.  (Id.).  Plaintiffs also had a Zoom discussion with defense counsel about their request after plaintiffs' deposition of Detective Casanova on March 22, 2021.  In every communication to date, defendants' only response has been to urge delay of any definitive response to plaintiffs.  (<u>Exhibit F</u>).

Finally, during LR 37.2 communications, the Board made it clear that it requires a Court Order in order to disclose the information plaintiffs seeking.  (Barton's March 3 email to Hofeld, <u>Exhibit F</u>).  Otherwise, the Board can only ask the parents/guardians for their voluntary consent to disclose their information.  (Id.).  If the matter is left up to each parent's consent, then plaintiffs will likely not get the witness information at all.  Plaintiffs offered to submit an agreed Court Order, and defendants again urged delay.

## IV. ARGUMENT

The relevance of these student eyewitnesses' knowledge and testimony to plaintiffs' case is self-evident, even to the Board. During LR 37.2 discussions, at no time did defendants make any recognized (under the federal rules) objection to plaintiffs' request. These students and their parents are occurrence eyewitnesses to both Haynes' and Tyler's involvement in whipping JC with belts. Because these students witnessed Haynes' involvement in and about her classroom during school hours when she was also teaching and was responsible for the students' – including JC's - welfare, their identities and testimony are also relevant to plaintiffs' *respondeat superior* and indemnification allegations against the Board. The students' parents/guardians are also relevant witnesses. As indicated in some of the student accounts above, Haines' *MO* was to approach the parents and get their permission for her (Haynes) to discipline their children with the belts. Some of the parents will likely testified that Haynes approached them in this manner. The parents are also the children's confidantes and have knowledge of whatever events and statements their children witnessed. In addition, the student eyewitnesses likely have information or knowledge in addition to what is summarized in the brief reports above, including knowledge of other students, besides JC, who Haynes actually used the belts on. The student eyewitnesses are also obvious *Monell*-fact witnesses because they almost unanimously indicate that Haynes threatened the entire class with the use of the belts before the incident date, starting on the first day of the 2018 school year. Plaintiffs are allowed to depose these eyewitnesses in order to gather relevant information and testimony, assess their credibility, and decide whether to call them at trial.

The student eyewitnesses and their parents should have been disclosed like any other witnesses. As with any other witness, plaintiffs plan to contact, interview, and, if necessary, depose them. Because the witnesses are minors, plaintiffs will contact the parents, not

the kids, and make all arrangements with and through the parents. The Board has sought to take advantage of its position of having sole possession of and access to this information and these witnesses. Not only did the Board fail to disclose the eyewitnesses and their contact information initially and not only does it refuse to disclose it in any form now, but during 37.2 discussions on March 21 the defense proposed a procedure in which they, including Haynes' attorney, would be present and interview the witnesses *with* the plaintiffs; in other words, plaintiffs could not interview them without Haynes and the Board present. The defense attorneys do not represent these students or their parents. Thus, Haynes and the Board are seeking to use their relationships with these families to control and influence their testimony about Haynes. This is completely improper. The Board should not be permitted to arrange interviews or depositions or attend plaintiffs' interviews. As with any other witness who they do not represent, defendants should disclose the information and leave plaintiffs to investigate from there.

Plaintiffs plan to interview and/or depose the students only in the presence of their parents. In order to be able to locate and contact the families, plaintiffs respectfully request that the Court order the Board to produce the following specific information: the full legal names of the students and all authorized parents and/or guardian(s) of each student; the complete, current contact information (including residential address, phone and email) of each authorized parent/guardian; and the last 4 digits and month and year of birth of each authorized parent/guardian of each student. The latter is requested in the event the parents/guardians' address and phone are no longer current and plaintiffs have to perform person searches using LEXIS-NEXIS. The incident occurred 2.5 years ago, many families may have moved elsewhere by now, and defendants delayed producing the contact information for these families until now when some of it may be stale.

In response to vague concerns about time, plaintiffs repeatedly indicated to defendants that any depositions of children and/or their parents would be brief because their observations are limited. (Exhibit F). Therefore, there is sufficient time before the June 1 fact discovery cutoff to get these depositions done. Several depositions can be in a day. They can probably all be done over 2-3 days. The Board has also expressed nebulous concern about "dragging" the eyewitnesses through depositions. Plaintiffs' counsel represents over 30 children and knows how to question them gently. Plaintiffs would also accept any procedural safeguards that the Court imposed to protect their well-being and plaintiffs' right to these depositions.

In addition to the names and contact information, plaintiffs need an unredacted copy of the CPS investigator's report. Without an unredacted copy, it is difficult to match the names and contact information that defendants are ordered to produce with the student testimony that is summarized in the report, especially since some of the student witnesses have similar or identical initials. Additionally, one party or another may need an unredacted copy of these statements to gently impeach some witnesses. Finally, to state the obvious, if defendants are ordered to produce the information, then there is no reason to keep that same information redacted in the report.

The discovery cut-off in this case is June 1, 2021. Defendants' failure to identify these witnesses and their refusal to identify them and produce contact information may now cause prejudice to plaintiffs. In an effort to avoid that, plaintiffs respectfully request that the Court order the Board to produce all names and contact information within seven (7) days.

## V.    CONCLUSION

This is a motion that should never have had to have been filed. The relevance of these occurrence witnesses' knowledge and testimony is so obvious that it is beyond dispute for

any attorney who takes seriously his or her discovery obligations and obligation of candor to this Court (*via* MDIPs).  Defendants' complete refusal to even identify any of the witnesses in any form or to provide any their contact information in MIDPs or elsewhere is a clear violation of the discovery rules.  The delay caused by defendants' knowing refusal to identify witnesses and contact information that it was *mandated* to disclose now risks prejudicing plaintiffs who have limited time to complete oral discovery.  Plaintiffs believe this conduct merits an appropriate sanction from the Court, including but not limited to sufficient time in which to interview and/or depose these witnesses.

WHEREFORE, plaintiffs respectfully request that the Court enter an Order:

(1) compelling the Board to produce within seven (7) days the names of all of the student witnesses and their parents and the complete, current contact information for the parents (address, phone and email for both parents or guardians) and last four digits of S. S. # and month and year of birth;

(2) ordering an appropriate sanction for the Board's obstruction of access to eyewitnesses whose testimony is directly relevant, including but not limited to an extension of discovery, if necessary, so that all of the eyewitnesses can be located, interviewed and/or deposed;

(3) granting plaintiffs attorney's fees and costs incurred in connection with the preparation of this motion, which should not have had to have been filed; and

(4) granting any further or other relief that the Court deems just.

Respectfully submitted,


s/Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle Street, #3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com
*Counsel for Plaintiffs*

## NOTICE OF FILING AND CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, Al Hofeld Jr., attorney for plaintiffs, hereby certify that on March 29, 2021, filing and service of the foregoing ***Plaintiffs' Motion to Compel***, was accomplished pursuant to ECF as to Filing Users, and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.


/s/ Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle Street, Suite 3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com