IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Asia Gaines, for herself and as next friend of her minor child, "JC," | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 19-cv-00775 |
| v. | ) ) ) | The Honorable John Z. Lee |
| The Chicago Board of Education, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**BOARD'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

Defendant, the Board of Education of the City of Chicago ("Board") by and through its attorneys, Elizabeth K. Barton and Christy L. Michaelson, responds to Plaintiffs' Motion to Compel [ECF No. 111] and Supplement to Plaintiffs' Motion to Compel [ECF No. 116] as follows:

**INTRODUCTION**

Rule 26 governs the scope and limits of discovery, providing that "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, Plaintiff is attempting to obtain unredacted reports from the Board's internal investigation and the Chicago Police Department's investigation, fourteen (14) minor students' names, their parents' or guardians' names, and their contact information. Plaintiff wants to interview and potentially depose all of these students. This

information is not relevant to Plaintiff's claims, and even if it was, the relevance is not proportional to the needs of the case because such a disclosure places a burden on the Board, the minor students, and their parents that does not outweigh its likely benefit. Additionally, Plaintiff has not provided any grounds to support a finding of "fault, bad faith or willful noncompliance" as to the Board's actions throughout discovery in this case.

## ARGUMENT

### I. Plaintiff Has Not Established That All Minor Students Have Relevant Information.

First, Plaintiff argues the students are occurrence witnesses to Kristen Haynes' and Juanita Tyler's involvement in the September 20, 2018 incident. ECF No. 111, p. 9. However, there is nothing in the investigative reports or testimony to date that indicates any students witnessed Tyler strike J.C. Rather, Plaintiff's theory of the case has always been that nothing happened to J.C. in the classroom, where other students may have been. Plaintiff claims there was a struggle between Haynes, Tyler, and J.C. in the hallway and then Haynes unlocked a bathroom door to allow Tyler and J.C. to be alone. The only two people present in the bathroom were Tyler and J.C. Accordingly, no student could have possibly witnessed the alleged abuse. Only one student told investigators they saw Haynes give the belts to the Aunt (Tyler), the Aunt said "if she had to come back he would get another whoopin'", J.C. had tears in his eyes, and J.C. said his Aunt gave him a whoopin'. ECF No. 111-1, p. 17. That is the only student the Board admits may have relevant information to the underlying incident.

Plaintiff makes much ado about the fact that the Board identified several student witnesses (by their initials) in its initial disclosures in the separate dismissal proceedings against Haynes pending before the Illinois State Board of Education. ECF No. 116. But those are initial disclosures, and the Board has not yet provided its final disclosures in that matter. The dismissal proceedings are scheduled for June 22, 2021, with a continued date of August 30, 2021 if necessary. So, it is

premature to assume the Board will be relying on these students as witnesses, or that they have any relevant information. Board counsel who is prosecuting the dismissal charges against Haynes reports that he has not conducted any interviews of the students identified in those disclosures. Rather, the information was gathered from the Board's and the CPD's investigative reports, which have been produced in this case. Plus, the dismissal proceedings are different from the constitutional claims Plaintiff makes in the case before this Court, so the students may not automatically have relevant information in both cases. Therefore, assuming the students have relevant information to this case just because they were identified in initial disclosures in another proceeding is premature, at best.

Second, Plaintiff argues the students are witnesses in support of the indemnification and *respondeat superior* allegations. In other words, Plaintiff seems to suggest these students will have relevant testimony regarding whether Haynes was acting within the scope of her employment at the time of this incident. In Illinois, conduct of a servant is within the scope of employment if (a) it is of the kind she is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master. *Gaffney v. City of Chicago*, 302 Ill. App. 3d 41 (1999). This evidence can only come from Board employees or Haynes, who have knowledge of the bounds of Haynes' employment and authority to act. Plaintiff has not proffered any legitimate reason why a student's testimony would offer anything to this issue.

Third, Plaintiff claims the students are "obvious *Monell*-fact witnesses because they almost unanimously indicate that Haynes threatened the entire class with the use of the belts before the incident date…" ECF No. 111, p. 9. Apparently, Plaintiff intends to focus their *Monell* claim only on Haynes' actions. However, "a single isolated incident of wrongdoing by a nonpolicymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct." *See Armour v. Country Club Hills*, No. 11 C 5029, 2014 U.S. Dist. LEXIS 1849 (N.D. Ill. Jan. 8, 2014). Indeed, there is no evidence, or even suggestion, that there were prior incidents of corporal punishment by

Haynes or any other teachers at Tilton Elementary, that there were prior complaints against Haynes for use of corporal punishment, that the Board was aware of any such complaints against Haynes, or that Haynes was subject to any prior discipline. Nothing in the investigative reports suggests the students would offer any relevant testimony to these scenarios. At the absolute most, Plaintiff suggests these students will testify that Haynes told students if they were bad, she had permission from their parents to discipline them with the belts. But those statements cannot form the basis for municipal liability. *Cf. Brown v. Evans*, No. 15 C 2844, 2016 U.S. Dist. LEXIS 1203, at *10 (N.D. Ill. Jan. 6, 2016) (citing *Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467 (7th Cir. 1997) ("Although a municipality cannot be held liable *solely* because it employs a tortfeasor, this long history of complaints without corresponding discipline edges the Complaint toward a policies or practice claim. Brown has not clearly stated the linkage between Evans' alleged violations and his *Monell* claim.") (internal citations and quotations omitted) (emphasis in original).

As a whole, Plaintiff has not articulated any concrete basis to subject all fourteen students to disclosure and potential questioning in this case. As Board counsel told Plaintiff's counsel many times throughout their Rule 37.2 discussions, the Board is willing to consider a more narrow request. However, Plaintiff's counsel refused to compromise, taking an unreasonable all-or-nothing approach and filing the instant motion.

### II. Disclosing and Deposing Fourteen Minor Students Is Burdensome.

Irrespective of any potential relevance of the students' testimony, the relevance is not proportional to the needs of the case. The Board is bound to protect student identifying information under both the Illinois School Student Records Act, 105 ILCS 10/ *et seq.* ("ISSRA") and the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g; 34 C.F.R. Part 99 ("FERPA"). Plaintiff's position that the Agreed Confidentiality Order in this case allows for disclosure of student identifying information completely ignores the law. ISSRA and FERPA permit disclosure of student

4

identifying information in limited circumstances, and the Agreed Confidentiality Order protects the information once it is disclosed. Under those statutes, the Board cannot release student identifying information without either parental consent, or a court order plus notification to each parent of the disclosure with an opportunity for the parent to inspect the records. Inevitably, when the Board makes such disclosures, the parents contact the Board attorneys with questions and concerns, which places additional burden on counsel to field such inquiries.

Moreover, the very act of subjecting a minor student to testimony related to an incident that occurred almost three years ago, and of which they were no part, carries the risk of harm and harassment. This is especially true here, where any potential information is available from other sources or is duplicative. Plaintiff already has the content of the students' statements in both the Board's and CPD investigative reports, as well as four of the students' names listed in the unredacted CPD reports. Any further testimony would serve no purpose. If Plaintiff is going to use the students' purported testimony regarding Haynes' alleged threats to children about the belts, the evidence only has value for purposes of holding the Board liable *if* the Board is aware of Haynes' statements and turned a blind eye to it. Therefore, Plaintiff's focus should be on what knowledge can be imputed to the Board, which has nothing to do with the students' testimony.

Additionally, whatever the students told the investigators can be obtained from the investigators themselves, which Plaintiff has already set out to do by taking the investigators' depositions. Plaintiff cites fear of Defendants objecting to the admissibility of the students' statements to investigators on hearsay or foundation grounds. However, Board counsel has already offered to stipulate to the students' statements to investigators in order to avoid any such duplicative and burdensome disclosure.

Plaintiff offers to accept any "procedural safeguards" the Court imposes to protect the well-being of the students. ECF No. 111, p. 11. Indeed, the parties have been negotiating such

5

safeguards for J.C.'s and his sister's depositions, which Plaintiff's counsel insists must include the following: (1) a three hour limit, (2) no leading questions, (3) take place in person at Plaintiff's counsel's office, (4) the deposition is videotaped, (4) limit the number of attorneys in present, (5) one parent may be present (6) counsel must be efficient, respectful and courteous, (7) Plaintiff's counsel examines first, and (8) a third party neutral, such as a retired judge, "presides at the deposition to make sure we all follow the rules." Plaintiff's counsel cannot have it both ways. If he wants procedural safeguards for his minor clients, then he must agree to those for other minor witnesses as well. However, even if those procedural safeguards are put in place, then two important questions remain: who will ensure these procedural safeguards are in place for the minor witnesses, and who bears the cost burden?

Board counsel may do their best to protect the interests of the students, but they do not represent the students and cannot prepare them or present them for deposition. Therefore, if the parents wish to protect the students interests at the deposition, they would have to find and pay for their own attorney. There would also need to be limits on the time and place of the deposition, since the students should not be taken away from the school obligations, and if the deposition were to take place downtown, that requires travel time and expenses.

Finally, Rule 30 states that a party must obtain leave of court to take more than ten depositions. Fed. R. Civ. P. 30(a)(2)(A)(i). To date, Plaintiff has taken six depositions and has noticed at least fifteen more. Therefore, the Board would object to Plaintiff taking any of the students' depositions on that basis as well.

### III. The Board's Proposed Compromises

In the interest of compromise, the Board proposed several alternatives to Plaintiff's counsel. For example, Plaintiff could finish the adults' depositions first in order to narrow down the potential list of student witnesses. Indeed, as noted above in Section I, the Board admits that <u>one</u> student may

have relevant information to the underlying incident. Alternatively, Plaintiff could wait to see whether the students are called to testify in the dismissal proceedings pending against Haynes. If they do, the Board could disclose that testimony here, so as not to subject the minor students to additional questioning by more lawyers in another proceeding. Additionally, as discussed above in Section II, the Board is willing to stipulate to the statements students made to the Board and CPD investigators. Any of these compromises gets Plaintiff what they claim they need without burdening the Board, the students, or their parents. If this Court is inclined to order disclosure of all student names and contact information, then the Board requests further briefing on the issue of what procedural safeguards must be put in place to protect the students from harm or harassment at a deposition.

## IV. The Board Has Complied With Its Obligations.

Plaintiff asserts the Board is "obstructing" discovery and violated their obligation of candor to the Court. ECF No. 111, pp. 11-12. But this could not be further from the truth. On June 21, 2019, the Board provided its MIDP disclosures including its investigative report. Plaintiff did not raise the issue of redacted student names until March 1, 2021. Exhibit 1. Since that time, Board counsel has been responsive and cooperative to the extent possible trying to reach an amicable resolution without court intervention. *Id.* Neither the Board, nor its counsel, have engaged in any misconduct or sanctionable behavior.

With respect to the Haynes' dismissal proceedings, the Board initially produced Haynes' discipline file on August 22, 2019. Then discovery in this case was stayed for 14 months pending the underlying criminal trial. ECF No. 75, 77, 101. Once discovery resumed, the parties engaged in discussions about outstanding discovery. During those discussions through March 2021, Plaintiff's counsel asked for an updated file on Haynes' discipline, as well as J.C.'s and his sister's student files. Accordingly, the Board produced those records on April 12, 2021 via email. Also on April 12, 2021,

Board counsel notified Plaintiff there were three news clips and two bodycam videos which were too large to send via email. Plaintiff's counsel advised he wanted the videos as soon as possible and offered to have someone from his office pick up a CD containing the news clips and bodycam videos. As such, Board counsel promptly burned the news clips and bodycam videos onto a CD for Plaintiff, who advised his paralegal would pick up the CD. To date, Plaintiff has not picked up the CD. The Board's actions are hardly the "willful" and "sanctionable" discovery violation that Plaintiff suggests.

Plaintiff makes an unfounded allegation that there are 2-4 additional student witnesses disclosed in the dismissal proceedings. ECF No. 116, p. 3. But, as Board counsel previously pointed out, all of the students disclosed in those proceedings are identified in the Board's or the CPD's reports. *See* Exhibit 2. In other words, there are a total of fourteen students identified in all three places: the Board's internal investigative report, the CPD's investigative report, and the Board's initial disclosures in the underlying dismissal proceedings.

Plaintiff's counsel also says he is still waiting on responses to the following documents from the dismissal proceedings: (1) the final disclosures, (2) all student witness statements, (3) the remainder of the Board's case file, and (4) the transcript of the proceedings. ECF No. 116, pp. 4-5. Again, as Board counsel explained to Plaintiff's counsel, there is nothing else to produce at this time. First, the Board has not made its final disclosures in the dismissal proceedings because the scheduling order was amended and the hearing was reset. Second, Board counsel has not interviewed any student witnesses in the dismissal proceedings, so there are no witness statements, affidavits, summaries of interviews, or notes of interviews. Third, the Board's entire case file in the dismissal proceedings was produced to Plaintiff, with the exception of the videos of news clips and police body camera footage as they were too large to send via email, however, Plaintiff advised he

would pick up from Board counsel's office on April 19, 2021, but never did. Fourth, there are no transcripts of any proceedings yet. *See* Exhibit 2.

Finally, Plaintiff conveniently omits the full context of the parties' Rule 37.2 discussions regarding these four items. On April 14, 2021 at 12:11 p.m., Plaintiff's counsel sent an email demanding disclosure of the student names, as well as the four items. Exhibit 2. He stated, "We do plan on filing a supplement to our motion to compel in the very near future." *Id.* Then, less than four hours later, Plaintiff's counsel sent another email stating he was filing the motion that night. *Id.* Board counsel responded, pointing out that this arbitrarily short deadline was not in the spirit of Rule 37.2, and that they would respond by the end of the following day. *Id.* Therefore, Plaintiff's counsel promised, "I will not move on 1-4 yet." *Id.* Despite these communications, Plaintiff still included these disputes in the supplemental filing. *See* ECF No. 116, pp. 4-5. And in fact, Board counsel responded to the four items before the end of the following day, as promised. Exhibit 2. Plaintiff's counsel's knee jerk response and misrepresentations do not comply with Rule 37.2 and cannot avail him of sanctions against the Board.

## CONCLUSION

As explained above, the Board is more than willing to work with Plaintiff to provide the names and contact information of minor students who may have relevant information in this case. However, to date, Plaintiff has not articulated a valid reason for needing to disclose and depose all fourteen minor students, which places a great burden on the Board, the students, and their parents. Simply put, any potential relevance of the minor students' expected testimony does not meet Rule 26's balancing test because the burden and expense of the proposed discovery outweighs its likely benefit. Accordingly, Defendant Board of Education of the City of Chicago asks this Court to deny Plaintiff's Motion, and grant any other appropriate relief.

Date:    May 4, 2021    Respectfully Submitted,

**DEFENDANT BOARD OF EDUCATION OF THE CITY OF CHICAGO**

Joseph T. Moriarty, General Counsel

<u>/s/ Elizabeth K. Barton</u>
Elizabeth K. Barton, Atty No. 6295848

Elizabeth K. Barton / ekbarton@cps.edu
Christy L. Michaelson / clmichaelson@cps.edu
Board of Education of the City of Chicago
Law Department
1 N. Dearborn St., Ste. 900
Chicago, IL 60602

## **CERTIFICATE OF SERVICE**

    I, Elizabeth K. Barton, hereby certify that I served the attached **Board's Response to Plaintiff's Motion to Compel** on counsel via the Court's CM-ECF E-filing on May 4, 2021.

                                                By:    /s/ Elizabeth K. Barton
                                                                     Elizabeth K. Barton, Atty No. 6295848