**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ASIA GAINES, for herself and as next friend of her minor child, "JC," ) ) ) ) | |
| Plaintiffs, ) | Case No. 19-cv-00775 |
| v. ) ) | Judge John Z. Lee |
| ) | |
| THE CHICAGO BOARD OF EDUCATION; ) KRISTEN A. HAYNES; and JUANITA TYLER, ) | Judge Sheila M. Finnegan |
| ) | **Jury Demand** |
| Defendants. ) ) | |

**PLAINTIFFS' RENEWED MOTION TO COMPEL
THIRD PARTY CBS BROADCASTING, INC.**

NOW COME plaintiffs, ASIA GAINES, for herself and as next friend of her minor child, JC, ("plaintiffs") by and through their attorneys, The Law Offices of Al Hofeld, Jr., LLC, and pursuant to Federal Rules of Civil Procedure 26 and 45, respectfully request that this Court enter an Order compelling Third Party CBS Broadcasting, Inc. ("CBS"), to produce the materials sought in plaintiffs' subpoena to CBS Broadcasting, Inc. In support of this motion, plaintiffs state as follows:

**INTRODUCTION**

On September 20, 2019, defendant Tyler beat 9-year-old plaintiff JC with belts in the boys bathroom at school. Defendant Haynes assisted Tyler by inviting her to the school for this purpose, by supplying the belts, and by physically forcing JC to go to the boys bathroom with Tyler. (See generally plaintiffs' amended complaint).

Just a few weeks after the incident in 2018, defendant Tyler spontaneously answered questions *on camera* from CBS reporter Dave Savini as she was walking down the street after

leaving the courthouse after a hearing in the criminal matter related to this case. Plaintiff JC also answered extensive questions on camera, telling the whole story of what was done to him. However, only a small farction of these parties' statements from the inerviews were included in the news story that subsequently aired on CBS for the public. https://chicago.cbslocal.com/2019/02/06/george-tilton-elementary-school-student-beaten-belt/; https://chicago.cbslocal.com/2019/02/07/lawsuit-filed-child-beating-case-cps-student/. (Last checked September 3, 2021). Indeed, the vast majority of Tyler's and JC's statements did not air and are contained solely in the non-public "outtakes" – or raw, unpublished video/audio footage - of the parties' complete interviews with CBS. The unpublished statements by Tyler that were recorded on camera constitute judicial admissions that will be admissible at trial and useable for impeachment. As explained below, the statements by JC are important evidence of the reliability of his statements about the incident and will assist the Court's in its pre-trial rulings converning whether key statements of his that would otherwise constitute inadmissible hearsay will be admissible under exceptions for the statements of minors in child abuse cases like this one.

As ordered by this Court, on Ocotber 26, 2021, plaintiffs properly issued and served subpoenas[1] to CBS Broadcasting, Inc., David Savini (the reporter who conducted the one-on-one interviews with Tyler, JC, and others) and, for good measure, two other CBS-related entities. CBS, *via* its litigation counsel and on behalf of CBS and Savini, responded by letter dated November 8, 2021 and stated its objections (attached Exhibit C); the attorneys had previously engaged in LR 37.2 consultations in connection with plaintiffs' earlier subpoena, and CBS' position had not

---

[1] Fourt subpoenas were issued, incuding attached Exhibits A and B, to CBS Broadcasting, Inc., and David Savini c/o CBS Broadcasting, Inc., respectively; each contained the same production request. They are collectively referred here to as the "subpoena to CBS."

changed. In particular, plaintiffs offered to drastically narrow the scope of their first subpoena request to the outtakes of a mere two interviews (i.e., those with Tyler and JC), offered to agree that those be maintained confidential and/or "attorney's eyes only" (because one involves a minor, the plaintiff JC), sent CBS a copy of the Protective Order that Judge Lee entered in this case, and offered to agree to the entry of any AEO order as well. (Exhibit D). However, in response to plaintiffs' offer of compromise, CBS has repeatedly offered nothing but copies of the news stories that aired publicly and contain a small mumber of direct quotations, and objected to producing anything else in response to the subpoena.[2] (Exhibit C). Consequently, the parties are at impasse.

Very recently, Magistrate Judge Gilbert in *Tate v. City of Chicago, et al*., 2020 U.S. Dist. LEXIS 137338 (N. D. Ill. Aug. 3, 2020), rejected *all* of the arguments that CBS makes in its stated objections in Exhibit C and ordered CBS to produce the raw footage (outtakes) of all interviews with six (6) plaintiffs. Additionally, this Court, in the person of Magistrate Judge Kim, ruled the same way in *Mendez v. City of Chicago*, *et al.,* 18-cv-5560, docket #196 (Minute Order attached hereto as Exhibit E), directing CBS to produce multiple interviews with each of the four plaintiffs in that case. CBS' counsel in this case is the same counsel who represented CBS in the *Tate* and the *Mendez* cases. (Id.) Therefore and for the reasons set forth below, this Court should grant Plaintiffs' Motion to Compel and order CBS to produce the very small and modest number of records that plaintiffs have requested.

## LEGAL STANDARD

The scope of discovery pursuant to Federal Rule of Civil Procedure 26 is "broad and liberal." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Pursuant to Rule 26, a party may

---

[2] CBS issued correspondence stating its objections to the subpoena to CBS, attached as Exhibit C.

discover "any matter, not privileged, which is relevant to the subject matter involved in the pending action," and "[t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Furthermore, "as provided for in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." FED. R. CIV. P. 34(c). "Courts commonly look unfavorably upon significant restrictions placed upon the discovery process." *Kodish v. Oak Brook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 450 (7th Cir. 2006). The objecting party has the burden of establishing why a particular discovery request is improper. *Id.* The standard for undue burden is provided below.

### ARGUMENT

Plaintiff JC, a 9-year-old child, suffered severe PTSD as the result of the incident on September 20, 2018. Caught off guard as she was leaving the courthouse, defendant Tyler spontaneously and candidly answered questions from Savini in a one-on-one interview. During the interview, she made numerous statements and admissions about her participation in the underlying incident. She also made statements about prior incidents that led to her being charged with domestic battery in other incidents. But only a very small number of these statements appeared in the publicly aired story. https://chicago.cbslocal.com/2019/02/06/george-tilton-elementary-school-student-beaten-belt/; https://chicago.cbslocal.com/2019/02/07/lawsuit-filed-child-beating-case-cps-student/. Later, Tyler made statements to various investigators that contradicted several of the unpublished statements she made to CBS. Tyler will be sitting for a deposition in this case soon.

4

JC sat for an extended interview with Savini in which he described in detail what happened during the incident in which he was beaten by Tyler with belts. He gave this interview and made these statements just a few weeks after the incident and contemporaneously with answering questions from various investigators. When deciding whether to admit any of the minor JC's statements into evidence that would otherwise be considered hearsay, the Court will evaluate their reliability based upon several indicia specified in case law. While his statements are crucial to proving his case, a totality of the circumstances test determines whether a child's out-of-court statements are reliable enough to fall under the residual hearsay exception. *Doe v. United States*, 976 F.2d 1071, 1075 (7th Cir. 1992). In this connection, the judge may consider "any evidence that sheds light on whether the child declarant was particularly likely to be telling the truth when the statement was made." *Id.* The *Doe* court provided a list of factors that bear on reliability of a child's out of court statements:

- Spontaneity
- Consistent repetition
- Mental state of the child when the statement was made
- Use of terminology unexpected for a child of that age
- Lack of motive to fabricate

(Id.). Subsequent Seventh Circuit decisions have expanded this list of reliability indicia for child-witness statements in child abuse cases to include several other criteria.[3] In this case,

---

[3] They include:

- The statements are self-incriminatory. *United States v. McPartlin*, 595 F.2d 1321, 1351 (7th Cir. 1979)
- The witness is disinterested. *United States v. Howard*, 774 F.2d 838, 845-46 (7th Cir. 1985).
- The spontaneity of statement. *Howard* at 845-846.
- Whether declarant directly observed the event / statement was based on personal knowledge. *Howard* at 845-846; *Burton v. Kohn Law Firm., S.C.,* 934 F.3d 572, 583-84 (7th Cir. 2019); *Harris v. City of Chi.*, 327 F.R.D. 199, 201-203 (N.D. Ill. Feb. 13 2018).
- Event was not complicated enough that the declarant would have difficulty perceiving or remembering the event. *Howard* at 845-846

5

plaintiffs need the raw footage of JC's full interview with CBS in order to utilize his full statement of the event to help demonstrate to Judge Lee that JC's statements about the incident have been consistent and reliable and should be admitted into evidence at trial. Secondarily, plaintiffs wish to show the jury video of JC at age 9 when the incident occurred so that they can see his diminutive size and appearance relative to the defendants. The defendants in this case would of course argue that any inconsistencies in JC's tatements to CBS are relevant for impeachment and credibility.

In their subpoena to CBS, including in their Local Rule 37.2 conference with CBS' counsel, plaintiffs focused on obtaining all statements made by Tyler and JC, whether on or off camera, and whether publicly aired or not. (Exhibits A and B). These are the only materials plaintiffs seek.

During and following the plaintiffs and CBS' LR 37.2 conference, CBS only agreed to produce the "as published" (i.e., publicly aired) statements of Tyler and JC; CBS maintains its objections as to any "unpublished" video footage (outtakes) and other documents containing

---

- Consistent repetition. *Howard* at 845-846
- Telling the same information to multiple people. *United States v. Vretta,* 790 F.2d 651, 659 (7th Cir. 1986).
- Lack of motive to fabricate. *Vretta* at 659; *Kubsch v. Neal*, 800 F.3d 783, 799-800 (7th Cir. 2015).
- Statements are made close in time to the events they describe / memories are fresh. *Vretta* at 659;
- Character for truthfulness. *Burton* at 583-84; *Harris* at 201-203; *United States v. Moore*, 824 F.3d 620, 622-23 (7th Cir. 2016).
- Statement was recorded. *Kubsch at* 799-800.
- Statement was detailed and specific. *Kubsch at* 799-800.
- Availability of evidence on the issue. *Harris* at 201-203; *Moore* at 622-23.
- Witness's motivation to testify. *Harris* at 201-203; *Moore* at 622-23.
- Whether the witness recanted. *Harris* at 201-203; *Moore* at 622-23.
- Existence of corroborating evidence. *Harris* at 201-203; *Moore* at 622-23.
- Reason for witness's unavailability. *Harris* at 201-203; *Moore* at 622-23.

statements of the Gaines family members and other interviewees. (Exhibit C). However, as there is no expectation of privacy by the interviewees in their statements to the press (regardless of whether given on or off camera), given the lack of a "reporter privilege" in the Seventh Circuit, and given the inability of CBS to show any undue burden of producing raw interviews with a mere two individuals, this Court should order production of the materials requested by plaintiffs' subpoena.

## I. CBS Should Be Ordered to Timely Respond to the Subpoena

Federal Rule of Civil Procedure 45 allows parties to a lawsuit to subpoena records from third parties. FED. R. CIV. P. 45(a). Despite the clear language of Rule 45, CBS has produced no records at all in response to plaintiffs' subpoenas. As plaintiffs explained to CBS' counsel, its compliance with plaintiffs' subpoenas is necessary in order for fact discovery to be completed and in particular for plaintiffs to take defendant Tyler's deposition effectively. CBS has sole possession of materials that are extremely relevant to this case, namely outtake videos containing defendant Tyler's complete candid statements as well as plaintiff JC's extended interview containing statements regarding the underlying incident. Plaintiffs want to confront/impeach/question Tyler about her candid statements to CBS reporter Savini, as well as use portions of her raw footage interview as trial exhibits. For these reasons, the materials are directly relevant and impose little burden, such that this Court grant plaintiffs' motion.

## II. The Seventh Circuit Does Not Recognize a "Reporter Privilege" to Withhold Any Documents/Notes/Videos of Statements Made by the Parties

This Court should order CBS to produce all video/audio recordings of Tyler and JC. Production of these materials is entirely proper as they are not protective by any "reporter's privilege." *See Taylor v. City of Chi.*, No. 14 CV 737, 2015 U.S. Dist. LEXIS 146954, at *5-7

7

(N.D. Ill. Oct. 29, 2015) (Finnegan, J.) (explaining that the Seventh Circuit and Northern District do not recognize a "reporter's privilege"). Significantly, the so-called "Reporter Privilege" does not extend to documents or notes of statements made by the Plaintiffs to a lawsuit.

Significantly, the Seventh Circuit has expressly held that the Illinois Reporter's Privilege Act is inapplicable in federal question cases. *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003) (explaining that "[s]tate law privileges are not 'legally applicable' in federal question cases. . . ."). *McKevitt* is controlling and has been relied upon by multiple Courts when considering the same issue. *See Thayer v. Chiczewski*, 257 F.R.D. 466, 468-69 (N.D. Dist. 2009) (Keys, J.); *Wilson v. O'Brien*, No. 07 CV 3994, 2009 U.S. Dist. LEXIS 22967, *19-20 (N.D. Ill. Mar. 20, 2009) (Ashman, J.) (citing *McKevitt*, 339 F.3d at 533; *Mosely,* 252 F.R.D. at 424-25). As the Court's jurisdiction in this case is based on federal question jurisdiction, the Illinois reporter's privilege has no bearing here.

In *McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003), the Seventh Circuit determined that "the interest of the press in maintaining the confidentiality of sources is not absolute." *Id.* at 532. "[R]ather than speaking of privilege, courts should simply make sure that a subpoena *duces tecum* directed to the media, like any other subpoena duces tecum, is reasonable in the circumstances, which is the general criterion for judicial review of subpoenas." *Id.* at 533. The *McKevitt* Court further found that there was no conceivable interest in confidentiality in that case given that the identity of the source was known. Of note, where, as here, the information in a reporter's possession does not stem from a confidential source, "it is difficult to see what possible bearing the First Amendment could have on the question of compelled disclosure." *Id.*

8

The Seventh Circuit has also deemed unpersuasive a reporter's claim that her "journalistic integrity" would be besmirched if a subpoena for audiotapes and videotapes of the reporter's interviews of the plaintiff were made public. *Mosely v. City of Chi.*, 252 F.R.D. 421, 431 (7th Cir. 2008).

Finally, in *Bond v. Utreras*, No. 04 CV 2617, 2006 WL 2494759, at *1 (N.D. Ill. Aug. 23, 2006) (Keys, Magistrate J.), the Court upheld its earlier decision ordering a reporter "to produce any notes or tapes he may have documenting his conversation with the plaintiff . . . ." *Id.* at *1-2). When denying the reporter's motion to reconsider that ruling, the Court explained that it does not recognize a "reporter's privilege." *Id.* at *2. In other words, a reporter's "work product is not automatically protected from disclosure." *Id.* Notably, "by using his position as an "embedded" journalist to investigate [the plaintiff's] plight, to help her find an attorney, and to work closely with that attorney to further her case, [the reporter] has forfeited any right he may have had to expect that his 'journalistic interests' would be preserved as to [the plaintiff]." *Id.*

Furthermore, a subpoena requesting the notes of any interview with Plaintiffs is reasonable. *Mosely*, 252 F.R.D. at 436. This is because "[n]otes of interviews that essentially record what a person said (whether or not the questions are also reflected) are not the same, either legally or factually, as a journalist's notes that record his or her own mental impressions, research endeavors, strategies, or anything else that may fairly be called work product." *Id.*

In short, Seventh Circuit and Northern District case law is clear—Mr. Savini and other CBS employees' work product is not automatically protected from disclosure and the materials requested in the subpoena are certainly not protected by any "reporter's privilege." Accordingly, the Respondents should be compelled to comply with Defendant Officers' subpoenas.

### III. There Has Been And Will Not be Any Showing of Undue Burden to Prevent Production of Plaintiffs' Statements

CBS has no undue burden associated with producing the raw footage from two interviews and cannot demonstrate any. Whether determining whether a subpoena is "reasonable in the circumstances" or imposes an "undue burden," courts consider the following factors:

> (1) the likelihood that compliance will result in production of the information, (2) whether the discovery is unreasonably cumulative or duplicative, (3) whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source, and (4) whether the burden of the proposed discovery outweighs its likely benefit.

*Taylor*, 2015 U.S. Dist. LEXIS 146954, at *8-9 (N.D. Ill. Oct. 29, 2015) (quoting *Mosley*, 252 F.R.D. at 427).

In this case, plaintiffs' significant interests in obtaining the records subpoenaed from CBS far outweigh any negligible or claimed burden imposed on the respondent by enforcement of the subpoena. As set forth above, plaintiffs' interests include, but are not limited to, effectively prosecuting and proving their case against Tyler in this civil lawsuit, having JC's critical statements about what happened during the incident admitted into evidence (since he is the only witness to much of what happened), and impeaching Tyler at deposition and trial with inconsistent statements from the CBS interview. In short, "the stakes for the [plaintiffs] could scarcely be greater." *See Mosley*, 252 F.R.D. at 433.

Furthermore, plaintiffs are seeking party statements directly concerning the incident that serve as the basis for this lawsuit and for their alleged damages. This is especially important here where Tyler later made various statements to the police and other investigators that directly contradict her statements to CBS in the outtakes as well as plaintiffs' account of what happened. Plaintiffs have a paramount interest in obtaining any and all statements made by defendants in

order to prove their allegations, not only regarding the incident but also regarding his injuries, both of which are directly relevant. The parties' statements in their full CBS interviews are obviously relevant. *See Taylor*, 2015 U.S. Dist. LEXIS 146954, at *29-30 (quoting Mosley, 252 F.R.D. at 430) ("[W]hen a reporter interviews a plaintiff regarding the events that are at the epicenter of his complaint[,] the criticality of the plaintiff's statements to the reporter on these issues is beyond debate."). Moreover, given the differing accounts of the incident by Tyler and JC, compliance with the subpoena will certainly result in the production of relevant statements made by both parties, such that discovery would not be unreasonably cumulative or duplicative.

Further, in ordering the disclosure of documents and information, the *Mosley* court explained that the information being subpoenaed is necessary that it can only be produced by the Respondent. *Id.* at 433. Significantly, the court determined that merely asking a party at his deposition what he had told the reporter was insufficient because his demeanor during the interview may be relevant and because, as a party, he may have a motive to color his testimony. *Id.* These same factors are relevant here given the nature of statements made by Tyle and JC and the fact that plaintiffs can only obtain the requested material from CBS.

In an effort to minimize any claimed burden on the Respondent, after serving their first subpoena plaintiffs offered to accept the raw footage interviews of just two individuals, Tyler and JC, rather than all CBS interviewees. Plaintiffs also offered to keep these interviews confidential and even attorney's eyes only. With respect to JC, plaintiffs of course have even more of an interest than CBS in keeping his interview confidential since he is the plaintiff. Although plaintiffs' first subpoenas to CBS requested *all* raw footage interviews, plaintiffs offered a good

faith comprise in order to reduce any burden on CBS. CBS rejected that and offered no good faith alternative.

CBS cannot establish that enforcement of the subpoenas would place an undue burden on it given the very limited scope of the requested materials. *See Mosley*, 252 F.R.D. at 431 (reasoning that "it is difficult to see what burden production of any audio or videotapes of interviews of [the plaintiff] would impose on either of the Respondents"). The *Mosely* court determined that compelling disclosure would not impose *any* burden on the Respondents, let alone an unreasonable burden. *Id.* at 434 (emphasis added). Accordingly, "the importance of and need for the information sought by [Defendant Officers] . . . are in inverse proportion to the burden imposed on the Respondents if they are required to produce audio and video tapes[, as well as notes or memos] of the Mosley interviews." *Mosley*, 252 F.R.D. at 433.

Additionally, "publication of interviews with *non-confidential* sources is consistent with the expectation—if not the desire—of the interviewee that there be public dissemination." *Id.* at 431. The possibility that the reporter may further disseminate interviews or material that was either already publically disclosed or that could have been previously disclosed if the reporter had so chosen does not alter that expectation. *Id.*

## IV. Defendant Tyler and JC Have No Expectation of Privacy In Any of Their Statements to CBS

Both Tyler and JC (through his mother) made the decision to speak with CBS reporter Dave Savini. Tyler answered questions candidly and spontaneously as she walked down the street on her way from the courthouse, and JC sat for an extended interview in his home with his mother. The subject of these interviews was the September 20, 2018 incident in which JC was beaten with belts. These interviews were filmed in their entirety. Therefore, it is a given that there are

videos/audio recordings containing numerous statements made by defendant Tyler and plaintiff JC that were never publicly aired, especially since it is obvious from watching the interviews that the videos have been edited. https://chicago.cbslocal.com/2019/02/06/george-tilton-elementary-school-student-beaten-belt/; https://chicago.cbslocal.com/2019/02/07/lawsuit-filed-child-beating-case-cps-student/. (Last checked September 3, 2021).

Significantly, the interviewees have absolutely no expectation of privacy or confidentiality in any statements they made to Mr. Savini, any other CBS employee, or when they were giving interviews. Instructive here is the Northern District of Illinois case, *Bond v. Utreras*, No. 04 CV 2617, 2006 WL 2494759, at *2 (N.D. Ill. Aug. 23, 2006) (Keys, Magistrate J.), in which the court determined that the *Bond* plaintiff had no expectations that her statements to the reporter would remain confidential. Specifically, "by deciding to sue, and by deciding to confide in [the reporter] and to enlist his services to help her pursue this suit, [the plaintiff] waived any right she may have had to expect her interactions with [the reporter] to remain confidential." *Id.*

Similar to the *Bond* plaintiff, defendant and plaintiff in this case waived any right they may have had to expect their interactions with Mr. Savini or any other CBS employee to remain confidential due to their decisions to their decision to confide in Mr. Savini and/or other CBS employees and their (plaintiff's) decision to sue and to enlist the services of CBS to highlight their lawsuit and to bring public attention to their case. Additionally, because they agreed to answer CBS' questions, the parties certainly do not constitute confidential witnesses or sources. Accordingly, this Court should enforce plaintiffs' subpoena to CBS and order it to produce the requested materials within seven (7) days.

13

## CONCLUSION

It is clear that plaintiffs' interests in obtaining the requested materials vastly outweigh any minimal burden imposed on the Respondent should the Court grant plaintiffs' motion. This, along with the lack of a "reporter's privilege" in the Seventh Circuit and the fact that the parties have no expectation of privacy with respect to any statements they made to CBS during their interviews, firmly establish that CBS should show cause as to why it should not be held in contempt of court if it does not immediately comply with plaintiffs' subpoenas by producing the requested materials by a date certain in the very near future.

WHEREFORE, plaintiffs respectfully request that this Court: (1) grant their Motion to Compel; (2) order CBS to produce the requested materials within seven (7) days; (3) order CBS to pay atrorney's fees to plaintiffs incurred in filing, briefing and arguing this motion; and (4) grant such other or further relief that the Court deems appropriate.

Respectfully submitted,

/s/ Al Hofeld, Jr.
Al Hofeld, Jr.

*Plaintiffs' counsel*
Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle Street, Suite #3120
Chicago, IL 60602
Office: (773) 241-5844
Fax: (312) 372-1766
Email: al@alhofeldlaw.com

**NOTICE OF FILING AND CERTIFICATE OF SERVICE BY ELECTRONIC MEANS**

      I, Al Hofeld, Jr., attorney for plaintiff, hereby certify that on November 17, 2021, filing and service of the foregoing ***Plaintiffs' Motion to Compel Third Party CBS Broadcasting, Inc.,*** was accomplished pursuant to ECF as to Filing Users, and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

                                                            /s/ Al Hofeld, Jr.
                                                            Al Hofeld, Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle Street, Suite #3120
Chicago, IL 60602
Office: (773) 241-5844
Fax: (312) 372-1766
Email: al@alhofeldlaw.com