# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ASIA GAINES, for herself and as next friend of her minor child, "JC", <br><br> *Plaintiffs*, <br><br> v. <br><br> CHICAGO BOARD OF EDUCATION, KRISTIN A. HAYNES, and JUANITA TYLER, <br><br> *Defendants*. | Case No. 19-cv-00775 <br><br> Judge John Z. Lee <br><br> Magistrate Judge Sheila M. Finnegan |

## NON-PARTY CBS BROADCASTING INC.'S OPPOSITION
## TO PLAINTIFFS' RENEWED MOTION TO COMPEL

BRYAN CAVE LEIGHTON PAISNER LLP
Brian A. Sher
Steven G. Trubac
161 N Clark Street, Ste 4300
Chicago, IL 60601
Phone: (312) 602-5000
Fax: (312) 602-5050
brian.sher@bclplaw.com
steve.trubac@bclplaw.com

BALLARD SPAHR LLP
Jay Ward Brown (*pro hac pending*)
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Phone: 202-661-2200
Fax: 202-661-2299
brownjay@ballardspahr.com

*Counsel for non-party CBS Broadcasting Inc.*

Non-party CBS Broadcasting Inc. ("CBS2"), by and through counsel, respectfully submits this response to Plaintiffs' Renewed Motion to Compel Third Party CBS Broadcasting Inc. (the "Motion" or "Mot."), Dkt. 188. Plaintiffs' Motion stems from four identical subpoenas purportedly served on (a) two employees of CBS Broadcasting Inc. d/b/a CBS2, (b) CBS Broadcasting Inc., and (c) CBS, Inc. *See* Mot. Exs. A-B (attaching two of the four subpoenas) (the "Subpoenas"). The Subpoenas seek "[a]ll videos of your complete interviews, including all outtakes, of [JC] and Juanita Tyler conducted in 2018 and 2019." *Id.* CBS2 timely objected to the Subpoenas pursuant to Rule 45. *Id.* Ex. C. Plaintiffs now ask the Court to enter an order compelling CBS2 to produce the requested records and to reimburse plaintiffs for their attorney's fees. *Id.* at 14.

The Motion should be denied because the materials sought are protected from disclosure by a federal reporter's privilege, and for the independent reason that the Subpoenas are unreasonable and enforcement would constitute an undue burden on CBS2, including because of the adverse impact on the ability of its employees to gather and report the news. As to the request for attorney's fees, even if the Court were ultimately to disagree with CBS2 on the merits, there is no basis in law for ordering CBS2 to reimburse plaintiffs for their attorney's fees merely because CBS2 exercised its right as a non-party to object to the production of the records pursuant to Rule 45.

## **RELEVANT BACKGROUND**

As the Court is aware, earlier this year, plaintiffs served two identical subpoenas on Derek Dalton and Dave Savini, as, respectively, "President and General Manager of WBBM-TV (CBS2)" and "Investigative Reporter, CBS 2." Dalton and Savini were employees of CBS2,

which is a television station owned and operated by CBS Broadcasting Inc.[1] After CBS2 objected to those subpoenas, plaintiffs filed a Motion for Rule to Show Cause (the "RTSC Mot."), Dkt. 165, directed to non-party ViacomCBS Inc., which is CBS2's ultimate parent corporation. Following briefing by ViacomCBS and plaintiffs, Dkts. 176 and 180, plaintiffs withdrew that motion on October 21, and this Court granted plaintiffs "leave to serve new subpoenas identical to those at issue in the withdrawn motion except directed to CBS Broadcasting, Inc. (among others)." Minute Entry, Dkt. 183. On October 26, plaintiffs served four identical subpoenas: one directed to the company CBS Broadcasting Inc.; one to CBS2 employee Savini; one to former CBS2 employee Dalton; and the fourth to a non-existent entity "CBS, Inc." *See, e.g.*, Mot. Exs. A and B. CBS2 timely objected to the Subpoenas pursuant to Rule 45 by letter dated November 8. *Id.* Ex. C. On November 17, plaintiffs filed the present Motion to Compel.

## ARGUMENT

**I.     PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THE MATERIALS ARE PROTECTED BY A FEDERAL REPORTER'S PRIVILEGE.**

While the Supreme Court has yet to address whether a reporter's privilege exists in civil cases, every circuit to consider the question has held that such a privilege does exist. *See McKevitt v. Pallasch*, 339 F.3d 530, 532 (7th Cir. 2003) (collecting cases). As the Second Circuit has explained, the privilege, even for non-confidential material, is grounded "in a broader concern for the potential harm to the 'paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters.'" *Gonzales v. NBC*, 194 F.3d 29, 33 (2d Cir. 1998) (quoting *Baker v. F. &*

---

[1] Dalton has since left CBS2 and is no longer an employee of CBS Broadcasting Inc. Savini is still employed by CBS2.

*F. Inv.*, 470 F.2d 778, 782 (2d Cir. 1972)). The Seventh Circuit has never decided whether a reporter's privilege exists in the civil context and has never ruled regarding the existence of such a privilege except in the context of an application pursuant to 28 U.S.C. § 1782, a miscellaneous proceeding addressing assistance to foreign tribunals and to litigants before such tribunals. *McKevitt*, 339 F.3d at 533. In *McKevitt*, Judge Posner criticized some circuits' recognition of a reporter's privilege derived from the First Amendment, concluding that, "rather than speaking of privilege, courts should simply make sure that a subpoena duces tecum directed to the media, like any other subpoena duces tecum, is reasonable in the circumstances." *Id.*

While CBS2 respectfully maintains that *McKevitt* is not controlling on the First Amendment question presented here precisely because the narrow fact pattern presented in that case is inapposite, CBS2 recognizes that this Court has construed *McKevitt* as controlling even in the context of civil litigation. *Taylor v. City of Chicago*, No. 14 C 737, 2015 U.S. Dist. LEXIS 146954, at *5 (N.D. Ill. Oct. 29, 2015). CBS2 also recognizes that this Court has declined to recognize a reporter's privilege rooted in federal common law. *Id.* at *6. *But see McKevitt*, 339 F.3d at 532 (emphasizing the "important point" that the "Constitution is not the only source of evidentiary privileges" and crediting those courts that "cut the reporter's privilege free from the First Amendment" to recognize a "federal common law privilege for journalists" (citing, e.g., *Gonzales*, 194 F.3d at 36 n.2)). Therefore, although CBS2 urges the Court to reconsider its interpretation and application of *McKevitt*, and to hold that a reporter's privilege protects CBS2 from having to disclose the unpublished portions of the interviews demanded in the Subpoenas in this civil action, CBS2 acknowledges that this argument may be more properly addressed to the appellate court, and CBS2 raises it here to preserve it.

3

**II.     THE SUBPOENAS SHOULD NOT BE ENFORCED BECAUSE THEY ARE UNREASONABLE AND IMPOSE AN UNDUE BURDEN ON A NON-PARTY.**

*McKevitt* and the reporter's privilege aside, as may any non-party served with a subpoena, CBS2 objected to these Subpoenas pursuant to Rule 45 on the independent ground that they are unreasonable and pose an undue burden on it and its employees. Fed. R. Civ. P. 45(d)(1); Mot. Ex. C. Plaintiffs have failed to show otherwise.

**A.     This Court Must Consider the Motion Against the Backdrop of the Public Policy of Illinois as Embodied in the Illinois Reporter's Privilege Act.**

Illinois, as a matter of public policy, affords a privilege to newsgatherers, such as CBS2, to protect their sources and information, whether confidential or not, published or unpublished, from compelled disclosure. *See* 735 ILCS 5/8-901; *see also People v. Slover*, 753 N.E.2d 554, 557-58, 323 Ill. App. 3d 620, 623-25 (4th Dist. 2001); *Dunn v. Hunt*, No. 02-L-10310, 2003 Ill. Cir. LEXIS 7, at *6 (Ill. Cir. Ct. July 25, 2003) (Act protects "resource materials and information gathered by a journalist"). By limiting discovery against newsgatherers, the privilege "preserve[s] the autonomy of the press . . . thereby permitting the public to receive complete, unfettered information." *In re Arya*, 589 N.E.2d 832, 834, 226 Ill. App. 3d 848, 850-51 (4th Dist. 1992). That public policy weighs against disclosure here.

Plaintiffs argue that the Act is wholly irrelevant, asserting that it is "inapplicable in federal question cases." Mot. at 8 (citing *McKevitt*, 339 F.3d at 533). Indeed, the Seventh Circuit has explained that, in federal question cases such as this one, federal privilege law applies and, conversely, Illinois privilege law "does not govern." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004) (Posner, J.). Were it otherwise, the "enforcement of federal law might be hamstrung if state-law privileges more stringent than any federal privilege . . . were applicable to all federal cases." *Id.*

4

But plaintiffs miss the point entirely: The Seventh Circuit also has instructed that state privileges, while not controlling, *are* relevant in federal question cases. *Id.* Specifically, it has held that the existence of a state privilege is a "factor in" considering a motion to compel. *Id.* at 932. As Judge Posner explained just months after *McKevitt*, "comity 'impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Id.* (quoting *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981)). Thus, while non-parties are "not entitled to count on the state privilege's being applied in federal court," so long as there is no substantial cost to federal policy, "comity has required [courts], not to apply the Illinois privilege, but to consider with special care arguments for quashing the subpoena on the basis of relative hardship" under Rule 45. *Id.* at 932-33; *see also Mem'l Hosp. for McHenry Cty.*, 664 F.2d at 1061 (where "state holds out the expectation of protection to its citizens [by way of privilege], they should not be disappointed by a mechanical and unnecessary application of the federal rule").

It bears emphasis in this regard that *McKevitt* involved the "obvious" "federal interest in cooperating in the criminal proceedings of friendly foreign nations," 339 F.3d at 532, an interest not present here. The Court of Appeals in *McKevitt* found the Illinois Act irrelevant in that particular miscellaneous action because the international discovery statute at issue expressly provided that only "'legally applicable'" privileges could be considered. *Id.* at 533 (quoting 28 U.S.C. § 1782). As Judge Posner, quoting the statute, explained, "[s]tate-law privileges are not '*legally applicable*' in federal question cases." *Id.* (quoting 28 U.S.C. § 1782). But the statutory question presented in *McKevitt* did not involve, and that court did not purport to address, the separate principle that, in other contexts (including this one), "comity 'impels federal courts to

5

recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Nw. Mem'l Hosp.*, 362 F.3d at 932.

In this regard, plaintiffs' suggestion that the court in *McKevitt* "found that there was no conceivable interest in confidentiality in that case given that the identity of the source was known," likewise misses the point. Mot. at 8. The *McKevitt* panel was considering what it saw as the relevant interests as a matter of *federal* law, but the comity requirement from *Northwest Memorial Hospital* and other Seventh Circuit cases recognizes that comity is *not* meant to honor *federal* interests; rather, comity honors the *state interests* at stake – here, as codified in Illinois law governing the reporter's privilege. *See Nw. Mem'l Hosp.*, 362 F.3d at 932.

Following this logic, at least one district court in this Circuit has recognized that – despite *McKevitt* – the Illinois Act is a relevant consideration in federal question cases. *Davis v. City of Springfield*, No. 04-3168, 2009 U.S. Dist. LEXIS 36756, at *6 n.1 (C.D. Ill. Apr. 28, 2009) (noting that magistrate judge "could have also considered the existence of the state reporter privilege in Illinois"). As that court recognized, "State privileges do not apply in federal court, but concerns for comity allow the Court to consider the existence of such privileges in evaluating the burden imposed on persons protected by such privileges in state court." *Id.* (citing *Nw. Mem'l Hosp.*, 362 F.3d at 933). Thus, the existence of a statutory reporter's privilege is "another factor that would indicate that the burden imposed by disclosure would have been even greater" than otherwise it may have been. *Id.*

In short, plaintiffs' assertion that the Illinois Reporter's Privilege Act is irrelevant to the question of whether the Subpoenas should be enforced against CBS2 reflects both a mischaracterization of *McKevitt* and ignores entirely the independent "comity" rule established by the Seventh Circuit. Under *Memorial Hospital*, a motion to compel CBS2 to produce the

6

unpublished fruits of its newsgathering must be viewed against the backdrop of the public policy embodied in the Illinois Act.

### B.  The Subpoenas Are Unreasonable and Subject CBS2 to Undue Burden

Pursuant to Rule 26(c), "justice requires protection for a party *or person* [such as non-party CBS2] from . . . *undue burden or expense.* . . . [And w]ith this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Mosely v. City of Chicago*, 252 F.R.D. 421, 430 (N.D. Ill. 2008) (emphasis added) (internal marks omitted).  To determine whether a non-party subpoena imposes an undue burden, courts should "balance . . . benefit and burden in complying with a subpoena." *Nw. Mem'l Hosp.*, 362 F.3d at 928.  As this Court has explained, this means that a court should consider "a number of case-specific factors":

> (1) the likelihood that compliance will result in production of the information, (2) whether the discovery is unreasonably cumulative or duplicative, (3) whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source, and (4) whether the burden of the proposed discovery outweighs its likely benefit.

*Taylor*, 2015 U.S. Dist. LEXIS 146954, at *8-9 (citing, *inter alia*, *Patterson v. Burge*, No. 03 C 4433, 2005 U.S. Dist. LEXIS 1331, at *1 (N.D. Ill. Jan. 5, 2015); *Nw. Mem'l Hosp.*, 362 F.3d at 927).

While plaintiffs argue that, "given the very limited scope of the requested materials" there can be no undue burden to CBS2, *see* Mot. at 12, this ignores this Court's observation that "[r]egarding burden, courts must assess more than mere 'administrative hardships' and, instead, should consider the myriad interests that production might compromise or injure." *Taylor*, 2015 U.S. Dist. LEXIS 146954, at *9 (citation omitted); *see also McKevitt*, 339 F.3d at 535 (noting that the district court on remand "might properly consider" whether the non-party would have to "abandon" story if forced to comply with the subpoena).  The chief interest, among the "myriad

7

interests that production might compromise," is the intrusion into a zone of protection provided by the Illinois Act. The Act protects against the compelled disclosure of the footage sought here to protect the ability to gather and disseminate newsworthy information to the public. *See, e.g., Arya*, 589 N.E.2d at 839-41 (videotapes); *Kelley v. Lempesis*, No. 13-4922, 2015 U.S. Dist. LEXIS 107719, at *5 (N.D. Ill. Aug. 17, 2015). As such, it is a factor that weighs strongly in favor of denying a motion to compel production. *See Davis*, 2009 U.S. Dist. LEXIS 36756, at *6 n.1 (existence of state reporter's privilege "would be another factor that would indicate that the burden imposed by disclosure would have been even greater"); *cf. Nw. Mem'l Hosp.*, 362 F.3d at 932 ("that quashing the subpoena comports with Illinois' medical-records privilege is a final factor in favor of the district court's action.").[2]

      Nor can the harm to these interests be considered in a vacuum. Unfortunately, CBS2 is a frequent recipient of subpoenas like those at issue here simply because it is in the business of gathering and reporting news about matters of interest and concern to the public. As Michele Youngerman, an Investigative Producer employed by CBS2 explains, CBS2's "investigations team alone has spent dozens of hours collecting and reviewing footage relevant to subpoenas in this and the many other cases for which we have received subpoenas" since November 2019. Youngerman Decl. ¶ 9. Indeed, including the four new subpoenas at issue on this motion, CBS2

---

[2] Plaintiffs' reliance on *Bond v. Utreras*, *see* Mot. at 8, 12, is unavailing. In that matter, the journalist "embedded" with the plaintiff, helping to "investigate [her] plight," helping her "find an attorney," and "work[ing] closely with that attorney to further the case," thereby "forfeit[ing] any right he may have had to expect that this 'journalistic interests' would be preserved." *Bond v. Utreras*, 2006 U.S. Dist. LEXIS 63522, at *5 (N.D. Ill. Aug. 23, 2006). Indeed, even with these facts, the court noted that it was "mindful that compelling [the journalist] to turn over notes and tapes – even if limited to those of [plaintiff] – imposes a burden on him; those items will reveal, to some extent, his journalist activities and his journalistic work product." *Id*. Plaintiffs do not even attempt to suggest—nor could they—that any CBS2 employee played an analogous role to that of the journalist in *Bond*. Therefore, CBS2 has not "forfeited" any right to the journalistic interests in its unpublished newsgathering information.

8

has now received at least 22 third-party subpoenas in just the last two years. *Id*. at ¶ 7 (identifying 18 subpoenas served as of date of declaration). Responding to these subpoenas has cost CBS2 thousands of dollars in employee time and litigation costs. *Id.* ¶ 9. There are other costs, too. Based on the Illinois Act, the First Amendment, and the common law, CBS has a policy not to disclose its unpublished newsgathering material absent a court order. This policy exists to prevent the "ero[sion] of trust" CBS2 has built with its sources and the community. *Id.* ¶ 11. Indeed, Ms. Youngerman explained that "sources are unwilling to speak with us unless they understand that CBS2 will keep their confidence such that sharing information with us will not compromise them or their livelihoods." *Id.* As a result, "[t]he kind of discovery requested here not only burdens the news organizations but burdens the public interest in a robust press." *Patterson*, 2005 U.S. Dist. LEXIS 1331, at *12. CBS2 takes seriously its role as a member of the Fourth Estate, investigating allegations of wrongdoing by public officials, and the burden on CBS2 of being forced to turn over unpublished newsgathering information time and again is very real.

While the burdens imposed by the Subpoenas on CBS2's business of gathering the news are apparent, the benefits to plaintiffs from the Subpoenas, and in particular the benefits related to unpublished outtakes from the Tyler interview, are not, and any such benefit is outweighed by the burdens on CBS2. In *Taylor*, to demonstrate need, the defendants who issued the subpoenas provided three examples of "areas of inconsistency" between statements made by the plaintiff to the Chicago Tribune as opposed to statements made elsewhere in discovery. *Taylor*, 2015 U.S. Dist. LEXIS 146954, at *19-20. After discussing each at length, this Court concluded that it was "satisfied . . . based on the three examples identified by Defendants, and the totality of the

9

circumstances here, that there is a substantial need to discover what Plaintiff said to Mills concerning the events at issue in this lawsuit." *Id.* at *29.

Unlike the defendants in *Taylor*, plaintiffs here offer no specific examples of need for the footage of the interviews. Instead, plaintiffs retreat to generalities, arguing that their interests in the raw footage of Tyler include "prosecuting and proving their case against Tyler" and "impeaching Tyler at deposition and trial with inconsistent statements from the CBS interview." Mot. at 10. The closest plaintiffs get to specificity is an allegation that "Tyler made various inconsistent statements to the police and other investigators that directly contradict her statements to CBS in the outtakes as well as plaintiffs' account of what happened." *Id.* But, unlike the defendant in *Taylor*, plaintiffs never identify what those purportedly contradictory statements are, and, insofar as the public record reveals, Tyler has yet been deposed in this case. What's more, plaintiffs in their latest Motion conspicuously turn the focus to allegedly inconsistent statements in the "outtakes" of Tyler's interview, in contrast to their previous motion against ViacomCBS, Inc., in which they cited Tyler's "statements to CBS" more generally. *Cf. id.* at 4, 10; RTSC Mot. at 9. Even with this recast of their argument, however, plaintiffs appear to already have in their possession contradictory statements that can be used for purposes of impeachment. As a result, they give this Court nothing, beyond the sheer fact that CBS2 interviewed Tyler, from which to determine whether the benefit to them in compelling production outweighs the burden to CBS2.[3] And the general need for impeachment evidence –

---

[3] CBS2 acknowledges that, in *Taylor*, this Court agreed with another district court that "when a reporter interviews a plaintiff regarding the 'events that are at the epicenter of his complaint . . . the criticality of [the plaintiff's or defendant's] statements to [the reporter] on these issues is beyond debate.'" 2015 U.S. Dist. LEXIS 146954, at *29-30 (citation omitted). In light of this Court's twelve-page discussion of defendants' examples of need in that case, however, CBS2 does not understand that this statement is meant to be read in a vacuum. The teaching of *Taylor* appears to be that the subpoenaing party must explain its need for the information sought in some

10

especially where some such evidence already exists – is not sufficient to overcome the burden imposed on CBS2 by intruding on the otherwise privileged nature of CBS2's unpublished newsgathering material. *See United States v. Cutler*, 6 F.3d 67, 70-71 (2d Cir. 1993).

Similarly, with respect to the interview of JC, plaintiffs fail to explain why the as-published portions of JC's interview are insufficient for their needs. The as-broadcast interview can be used both to demonstrate that his recollection has "been consistent and reliable," and it can be used to show the jury "his diminutive size and appearance relative to the defendants." Mot. at 6. Accordingly, plaintiffs fail to establish that any benefit to them outweighs the burden to CBS2 of being forced to produce the non-broadcast materials.

### III. PLAINTIFFS ARE NOT ENTITLED TO RECOVERY OF THEIR ATTORNEYS' FEES RELATED TO THE INSTANT MOTION.

Plaintiffs cast various aspersions on CBS2's conduct in response to the six subpoenas served in this matter, noting that "CBS has produced no records at all in response to plaintiffs' subpoenas," and alleging that "CBS rejected" an offer of compromise from plaintiffs and "offered no good faith alternative." Mot. at 7, 12. Plaintiffs then ask this Court – without citing a single supporting authority – to order CBS2 to pay their attorneys' fees "incurred in filing, briefing and arguing this motion." *Id.* at 14. To plainly state the matter, plaintiffs have misrepresented the facts and seek to impose a penalty neither contemplated nor warranted by Fed. R. Civ. P. 45.

Rule 45 contains "important provisions to protect the recipient of a subpoena from undue burden or expense, invasion of a privilege, or disclosure of protected material." *Cont'l Auto. Sys., U.S. v. Omron Auto. Elecs., Inc.*, No. 14 C 3731, 2014 U.S. Dist. LEXIS 84080, at *7 (N.D.

---

degree of specificity. *Id.* at *29 ("This Court . . . *based on the three examples identified by Defendants* . . . ." (emphasis added)).

11

Ill. June 20, 2014) (citing *SEC v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010)). Further, "under Rule 45(c), intervening court involvement is required prior to initiation of contempt proceedings if the recipient of the subpoena serves a written objection on the party or attorney designated in the subpoena." *Hyatt*, 621 F.3d at 694. In other words, "having timely served its objections to the subpoena, [a party is] no longer under any obligation to produce the requested documents— not unless and until ordered to do so by the court." *Exodus Refugee Immigration, Inc. v. Pence*, No. 15-cv-1858, 2016 U.S. Dist. LEXIS 94260, at *12 (S.D. Ind. July 20, 2016).

Consistent with its rights under Rule 45, CBS2 timely objected to the Subpoenas here at issue on the two independent bases that (i) the Subpoenas seek privileged material, and (ii) that the Subpoenas are unreasonable and impose undue burden because plaintiffs already have at their disposal or can obtain from the parties in this action the information they purport to need and forcing CBS2 to disclose non-published fruits of newsgathering would seriously compromise its ability to gather and report the news. Mot. Ex. C. Having so objected, CBS2 currently is under no obligation to produce *any* records responsive to the Subpoenas absent an order of this Court. Further, contrary to plaintiffs' assertion, CBS2 has consistently – and repeatedly – offered to provide DVDs of the as-broadcast interviews. *See, e.g.*, *id.* at 4. Although plaintiffs clearly are dissatisfied with that offer, to accuse CBS2 of failing to act in good faith to protect its unpublished newsgathering material is unwarranted and contrary to the facts. CBS2 has not acted in a manner that can support the imposition of sanctions of any kind, and in particular the imposition of a monetary sanction to pay plaintiffs' attorneys' fees.

12

## CONCLUSION

For all these reasons, CBS2 respectfully requests that this Court deny the Motion.

Dated: December 1, 2021

Respectfully submitted,

*/s/ Steven G. Trubac*
Brian A. Sher
Steven G. Trubac
BRYAN CAVE LEIGHTON PAISNER LLP
161 N Clark Street, Ste 4300
Chicago, IL 60601
Phone: (312) 602-5000
Fax: (312) 602-5050
brian.sher@bclplaw.com
steve.trubac@bclplaw.com

Jay Ward Brown (*pro hac pending*)
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Phone: 202-661-2200
Fax: 202-661-2299
brownjay@ballardspahr.com

*Counsel for non-party CBS Broadcasting Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 1, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.

*/s/ Steven G. Trubac*
Steven G. Trubac
