IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASIA GAINES, for herself and as next friend of her minor child, "JC," | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 19 C 775 |
| THE CHICAGO BOARD OF EDUCATION, KRISTEN A. HAYNES, and JUANITA TYLER, | ) ) Judge John Z. Lee ) Magistrate Judge Finnegan ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Asia Gaines, for herself and as next friend of her minor child JC, filed suit against the Chicago Board of Education, Kristen A. Haynes, and Juanita Tyler to recover for physical and psychological injuries JC allegedly suffered in connection with a beating at his elementary school on September 20, 2018. Plaintiffs assert a variety of state and federal claims, including use of excessive force in violation of 42 U.S.C. § 1983, assault, battery, conspiracy, and intentional infliction of emotional distress. Currently before the Court is Plaintiffs' motion to compel third-party CBS Broadcasting, Inc. to produce raw, unpublished video/audio footage of statements JC and Tyler made to television reporter Dave Savini shortly after the incident. For the reasons stated here, the motion is granted.

## BACKGROUND

Plaintiffs allege that on September 20, 2018, Haynes (JC's homeroom teacher) invited Tyler (a distant relative of JC) to come to the school for the purpose of beating JC with belts in the boys bathroom. According to Plaintiffs, Haynes supplied the belts and physically forced JC to go to the bathroom with Tyler, who conducted the beating. A few

weeks after this incident, Tyler spontaneously answered questions from Savini on camera as she was walking down the street after leaving the courthouse following a hearing in the criminal matter related to the case. Also around this time, JC sat for an extended recorded interview with Savini in which he described what occurred during the incident. A small portion of the statements made by both Tyler and JC appeared in the publicly aired story, along with statements from others whom Savini also interviewed. (*See* https://chicago.cbslocal.com/2019/02/06/george-tilton-elementary-school-student-beaten-belt/; https://chicago.cbslocal.com/2019/02/07/lawsuit-filed-child-beating-case-cps-student/, last viewed on April 29, 2022).

On October 26, 2021, Plaintiffs served subpoenas on CBS Broadcasting Inc. and Savini seeking "[a]ll video outtakes of CBS2 Chicago reporter Dave Savini's complete interviews with [JC] and Juanita Tyler in 2018 and 2019."[1] (Docs. 188-1, 188-2). CBS2 objected to the subpoenas, prompting Plaintiffs' motion to compel. Plaintiffs have since agreed to narrow the scope of the subpoenas to just the video/audio outtake recordings of the interviews with Tyler and JC. CBS2 insists that this modification is inadequate because the materials are protected by a reporter's privilege, and it would be unduly burdensome to produce them under Rule 45.

## DISCUSSION

### I. Reporter's Privilege

CBS2 argues that Plaintiffs' motion must be denied because the materials they seek are protected from disclosure by a federal common law reporter's privilege. (Doc.

---

[1] CBS2 is a television station owned and operated by CBS Broadcasting Inc. Plaintiffs also issued subpoenas to Derek Dalton, a former CBS2 employee, and to CBS, Inc., a non-existent entity. (Doc. 191, at 3 and n.1).

191, at 3).  That privilege, CBS2 says, "is grounded 'in a broader concern for the potential harm to the paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters.'"  (*Id.*) (quoting *Gonzales v. Nat'l Broadcasting Co.*, 194 F.3d 29, 33 (2d Cir. 1998)).  This argument is unavailing because courts within the Seventh Circuit have consistently found that no such reporter's privilege exists.  In *McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003), the Seventh Circuit held that the First Amendment offers no protection to news gatherers by which they may refuse to comply with otherwise applicable discovery requests, at least in the context of nonconfidential sources.  *Id.* at 532-33.  The court also determined that state-law privileges, specifically the Illinois statutory version of the reporter's privilege, 735 ILCS 5/8-901, "are not 'legally applicable' in federal-question cases."  *Id.* at 533.  *See also U.S. Dep't of Educ. v. Nat'l Collegiate Athletic Ass'n*, 481 F.3d 936, 938 (7th Cir. 2007) (citing *McKevitt* and other cases when stating in dictum that "[t]here isn't even a reporter's privilege in federal cases.").

Following *McKevitt*, district courts in Illinois repeatedly have rejected media attempts to quash subpoenas or otherwise withhold materials based on a reporter's privilege in federal question cases.  In *Tate v. City of Chicago*, No. 18 C 7439, 2020 WL 4437853 (N.D. Ill. Aug. 3, 2020), for example, CBS Broadcasting, Inc. moved to quash subpoenas seeking, among other things, audio/video outtake recordings of the plaintiffs in a § 1983 case alleging unlawful search, false arrest, and false imprisonment.  *Id.* at *1-2.  Relying on *McKevitt*, the court found "no basis, in law or in 'equity,' for recognizing a reporter's privilege," and held that neither the letter nor the spirit of the Illinois reporter's privilege shielded the materials from disclosure.  *Id.* at *2.  *See also Taylor v. City of*

3

*Chicago*, No. 14 C 737, 2015 WL 6561437 (N.D. Ill. Oct. 29, 2015) (declining to recognize a reporter's privilege rooted in federal common law); *Thayer v. Chiczewski*, 257 F.R.D. 466, 468-69 (N.D. Ill. 2009) ("disagree[ing]" with the argument that *McKevitt* "did not foreclose the potential existence of a journalistic privilege based upon federal common law or state law."); *Mosely v. City of Chicago*, 252 F.R.D. 421, 424-25 (N.D. Ill. 2008) (rejecting argument for a federal common law reporter's privilege based on *McKevitt*'s strong language questioning the purported basis for such a privilege).

CBS2 acknowledges this case law and cites no contrary authority supporting its request that the Court "reconsider [the] interpretation and application of *McKevitt*." (Doc. 191, at 4). Instead, CBS2 concedes that its argument "may be more properly addressed to the appellate court" and so "raises it here to preserve it." (*Id*.). In such circumstances, and absent any compelling basis to disregard *McKevitt* and its progeny, this Court concludes that there is no federal common law reporter's privilege applicable in this case and CBS2 cannot withhold the requested audio/video outtakes on that basis.

**II.    Rule 45**

CBS2 argues that even if the outtakes are not subject to a federal common law reporter's privilege, the motion to compel is still improper because it would be unduly burdensome to produce them under Rule 45. This Court disagrees.

**A.    Standard of Review**

As the Seventh Circuit observed in *McKevitt*, courts should ensure that a third-party subpoena "directed to the media, like any other subpoena duces tecum, is reasonable in the circumstances, which is the general criterion for judicial review of subpoenas." 339 F.3d at 533. Under Rule 45, a party that issues a subpoena "must take

4

reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). In determining whether the burden imposed is "undue," courts consider a variety of factors including: "(1) the likelihood that compliance will result in production of the information, (2) whether the discovery is unreasonably cumulative or duplicative, (3) whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source, and (4) whether the burden of the proposed discovery outweighs its likely benefit."[2] *Tate*, 2020 WL 4437853, at *3 (quoting *Taylor*, 2015 WL 6561437, at *3). This is a "case-specific inquiry" and since there is "no formula for determining reasonableness," the decision whether to quash or enforce a subpoena "rests squarely within the court's discretion." *Id*. (quoting *U.S. v. Banks*, 540 U.S. 31, 36 (2003)).

### B. Balancing of Benefit and Burden

Plaintiffs argue that they have a substantial need for the video/audio outtakes in order to "effectively prosecut[e] and prov[e] their case against Tyler in this civil lawsuit, hav[e] JC's critical statements about what happened during the incident admitted into evidence (since he is the only witness to much of what happened), and impeach[] Tyler at deposition and trial with inconsistent statements from the CBS interview." (Doc. 188, at 10). Plaintiffs believe that Tyler made numerous and possibly contradictory statements to Savini about her participation in the incident with JC, such as first denying and then admitting to being in the bathroom with him. (*Id*. at 4; Doc. 193, at 3). Tyler also may

---

[2] Other factors are whether: "(1) the information requested is relevant; (2) the party requesting the information has a substantial need for the documents; (3) the document request is overly broad; (4) the time period the request covers is reasonable; (5) the request is sufficiently particular; and (6) whether compliance with the request would, in fact, impose a burden on the subpoenaed party." *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *2 (N.D. Ill. Apr. 22, 2020).

5

have admitted to the underlying conduct in connection with another battery case she faced in Lake County, Illinois. (Doc. 193, at 3). These are the only recorded statements Tyler ever made regarding the incident. (*Id*.).

Plaintiffs view Tyler's unpublished video/audio statements as admissions which they deem "especially important here where Tyler later made various statements to the police and other investigators that directly contradict her statements to CBS in the outtakes as well as [P]laintiffs' account of what happened." (Doc. 188, at 2, 10). Notably, due to circumstances outside of Plaintiffs' control, Tyler's deposition has been delayed and is only recently on track to proceed. Given the more than three and a half year gap between the September 2018 incident and the anticipated deposition, Tyler's recorded statements made close in time to the event are particularly significant. Simply asking Tyler during a deposition what she told Savini is "not an adequate substitute for the audio or video tapes of h[er] conversations" given that "as a party to the case, [Tyler] has an obvious and undeniable motive to color h[er] testimony. *Mosley*, 252 F.R.D. at 433.

With respect to JC, Plaintiffs say the raw footage of his statements is important because it is the only recorded interview of him speaking about the incident. (Doc. 193, at 3). As this Court has noted, "when a reporter interviews a plaintiff regarding the 'events that are at the epicenter of his complaint[,] the criticality of the plaintiff's statements to the reporter on these issues is beyond debate." *Taylor*, 2015 WL 6561437, at *9 (quoting *Mosely*, 252 F.R.D. at 430). *See also Mendez v. City of Chicago*, No. 18 C 5560, Doc. 196, Minute Order (December 23, 2019) (ordering CBS to produce video recordings of the plaintiffs pertaining to the search of their residence and the events that transpired

6

thereafter because "the statements Plaintiffs made to CBS are relevant to the claims and defenses in this case.").

Moreover, JC described in detail what happened "just a few weeks after the incident and contemporaneously with answering questions from various investigators." (Doc. 188, at 5). Plaintiffs intend to use the outtakes "to help demonstrate to Judge Lee that JC's statements about the incident have been consistent and reliable and should be admitted into evidence at trial." (*Id*. at 5-6; Doc. 193, at 3). *See Doe v. U.S.*, 976 F.2d 1071, 1075 (7th Cir. 1992) (in determining the reliability of a child's out-of-court statement, "the trial judge may consider any evidence that sheds light on whether the child declarant was particularly likely to be telling the truth when the statement was made," including such factors as "spontaneity, consistent repetition, the mental state of the child at the time the statement was made, use of terminology unexpected of a child of similar age, and lack of motive to fabricate.") (internal quotations omitted).

CBS2 does not seriously dispute the relevancy of the video/audio outtakes given that the statements JC and Tyler made concern "the subject matter that is at the very heart of this litigation." *Tate*, 2020 WL 4437853, at *3. Nor does CBS2 suggest that Tyler and JC had any expectation of privacy when they decided to speak with a news outlet. Instead, CBS2 argues that the relative benefit Plaintiffs would receive from the footage is substantially outweighed by the burden to CBS2. The primary burden CBS2 identifies, however, concerns the intrusion into its purported rights under the Illinois reporter's privilege statute. Though CBS2 concedes that the statute is not controlling, it argues that "comity impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." (Doc.

7

191, at 6) (quoting *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 932 (7th Cir. 2004)). CBS2 reiterates that disclosure of the footage would impair its ability to gather and disseminate newsworthy information to the public, and urges the Court to view this as "a factor" weighing strongly in favor of denying the motion to compel. (*Id*. at 9).

CBS2 cites a single case for this proposition. (Doc. 191, at 7) (citing *Davis v. City of Springfield*, No. 04-3168, 2009 WL 1161619 (C.D. Ill. Apr. 28, 2009).[3] In *Davis*, the plaintiff issued a subpoena seeking the identity of the reporter's confidential informant and related interview notes. 2009 WL 1161619, at *1. The magistrate judge found that the reporter's "ability to gather and report news would be inhibited if [he] could not assure a confidential source of confidentiality." *Id*. at *2. In addition, the information in the reporter's notes had been disclosed to a limited number of third parties who could provide the necessary details to the plaintiff. *Id*. Based on these factors, the magistrate judge concluded that the burden to the reporter of revealing a confidential source outweighed the benefit to the plaintiff. *Id*. at *3. In affirming this ruling, the district court observed in a footnote that the magistrate judge also could have considered the Illinois reporter's privilege statute, and that this "would be another factor that would indicate that the burden imposed by disclosure would have been even greater." *Id*. at *3 n.1.

This Court is not bound by dicta from a district court decision, and nothing in *Davis* changes the Seventh Circuit's pronouncement in *McKevitt* that a subpoena directed to the media is evaluated for reasonableness in the same way as any other subpoena. 339 F.3d at 533. Moreover, the facts in *Davis* are easily distinguishable from those presented

---

[3] CBS2's reliance on *Kelley v. Lempesis*, No. 13 C 4922, 2015 WL 4910952 (N.D. Ill. Aug. 17, 2015), is misplaced because it was a diversity case decided under Illinois state law. *In re Arya*, 226 Ill. App. 3d 848, 589 N.E.2d 832 (4th Dist. 1992), likewise was governed by Illinois law.

8

here. First, Plaintiffs are seeking statements made by parties to this lawsuit, not the identity of a confidential informant. In addition, Plaintiffs have not requested Savini's notes and are only pursuing audio/video outtake recordings of Tyler and JC. (*See* Docs. 188-1, 188-2) (requesting "video outtakes."). Finally, there is no dispute that CBS2 has the pertinent footage in its possession and is "the only source from which [the outtakes] could readily be obtained." *Tate*, 2020 WL 4437853, at *3.

In effect, CBS2's articulated burden is simply an alternate route to a reporter's privilege, one that relies upon the same rationales that courts in this circuit have rejected. *See, e.g. Mosely*, 252 F.R.D. at 431-32 (rejecting a journalist's assertion that sources would "dry up" resulting in "a loss of information to the public" as "speculative," "illogical," and "not comport[ing] with the kind of specific and particularized demonstration courts have required to establish burden or 'good cause.'"); *Thayer*, 257 F.R.D. at 470 & n.5 (finding unpersuasive a journalist's "work product" and "loss of 'street cred'" arguments (regarding his future access to sources) for their absence of evidentiary support or a "showing of actual burden."). On the record presented, CBS2's invocation of the Illinois reporter's privilege statute, standing alone, is insufficient evidence of undue burden to overcome Plaintiffs' strong showing of substantial need.[4] Rather, "[t]he importance of and need for the information sought by the [Plaintiffs] in the instant case are in inverse proportion to the burden imposed on [CBS2] if [it is] required to produce audio and video tapes of the [Savini] interviews. *Mosely*, 252 F.R.D. at 433.

---

[4] CBS2 argues generally that in the past two years, its investigations team "has spent dozens of hours collecting and reviewing footage" relevant to some 19 subpoenas in addition to the subpoenas at issue here. (Doc. 191, at 9-10). But absent any evidence as to how much time and expense CBS2 would incur to retrieve and produce the outtakes requested in Plaintiffs' specific subpoenas, especially as narrowed, such a generic assertion in no way demonstrates that the burden of compliance would be undue.

## **CONCLUSION**

For the reasons stated above, Plaintiffs' Motion to Compel (Doc. 188) is granted. Plaintiffs' undeveloped request for "attorney's fees . . . plaintiffs incurred in filing, briefing and arguing this motion" (Doc. 188, at 14), however, is denied. CBS2 is to produce the video/audio outtakes of Tyler and JC by May 13, 2022.

ENTER:

*Sheila Finnegan*

SHEILA FINNEGAN
United States Magistrate Judge

Dated: April 29, 2022