IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASIA GAINES, for herself and as next friend of her minor child, "JC", <br><br>*Plaintiffs*, <br><br>v. <br><br>CHICAGO BOARD OF EDUCATION, KRISTIN A. HAYNES, and JUANITA TYLER, <br><br>*Defendants*. | Case No. 19-cv-00775 <br><br>Judge John Z. Lee <br><br>Magistrate Judge Sheila M. Finnegan |

**NON-PARTY CBS BROADCASTING INC.'S OBJECTIONS TO
THE MAGISTRATE JUDGE'S MEMORANDUM OPINION AND ORDER
<u>GRANTING PLAINTIFFS' MOTION TO COMPEL (Dkt. 206)</u>**

BRYAN CAVE LEIGHTON PAISNER LLP
Brian A. Sher
Steven G. Trubac
161 N Clark Street, Ste 4300
Chicago, IL 60601
Phone: (312) 602-5000
Fax: (312) 602-5050
brian.sher@bclplaw.com
steve.trubac@bclplaw.com

BALLARD SPAHR LLP
Jay Ward Brown (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Phone: 202-661-2200
Fax: 202-661-2299
brownjay@ballardspahr.com

*Counsel for non-party CBS Broadcasting Inc.*

Pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A), non-party CBS Broadcasting Inc. ("CBS2"), by and through counsel, respectfully objects to that portion of Magistrate Judge Finnegan's Memorandum Opinion and Order requiring CBS2 to produce "raw, unpublished video/audio footage" of statements made by plaintiff JC and defendant Juanita Tyler in response to a third-party subpoena served on CBS2 by Plaintiffs. *See* Dkt. 206 ("Order"). For the reasons discussed below, the portion of the Order compelling CBS2 to produce this footage should be set aside, both because the materials sought are protected by a federal reporter's privilege, and, separately, because the burden imposed on CBS2 by enforcement of the subpoena, including the significant impact of compliance on CBS2's ability to gather and report news to the public, outweighs any benefit to Plaintiffs from enforcement of the subpoena. CBS2 does not object to the portion of the Order holding that Plaintiffs are not entitled to recovery of their attorneys' fees related to their motion to compel production of these materials.

Because the Order directs CBS2 to produce the unpublished video footage by this coming Friday, May 13, *id.* at 10, CBS2 is filing a separate motion to stay the Order pending final resolution of these Objections.

## **RELEVANT BACKGROUND**

### A. Plaintiffs' Subpoenas

The subpoenas at issue are four identical subpoenas served by Plaintiffs: one directed to the correct third-party custodian, CBS Broadcasting Inc.; one to CBS2 employee Dave Savini; one to former CBS2 employee Derek Dalton; and the fourth to a non-existent entity "CBS, Inc." *See, e.g.*, Plaintiffs' Renewed Mot. to Compel Third Party CBS Broadcasting, Inc., at Exs. A and B (Dkt. 188) ("Motion to Compel"). As narrowed during motions practice, each subpoena seeks "[a]ll video outtakes of CBS2 Chicago reporter Dave Savini's complete interview with [JC] and

1

Juanita Tyler in 2018 and 2019." *Id*. CBS2 timely objected to the subpoenas pursuant to Rule 45 by letter dated November 8, 2021. *Id*. Ex. C.

### B. Plaintiffs' Motion to Compel

On November 17, 2021, Plaintiffs filed their Motion to Compel, seeking an order directing CBS2 to produce the unpublished portions of its interviews with JC and Tyler. Plaintiffs argued (1) the Seventh Circuit does not recognize a "reporter's privilege," (2) CBS2 had not shown it would suffer any "undue burden" if compelled to produce the materials, and (3) neither JC nor Tyler have any expectation of privacy in their statements made to CBS2. In addition, Plaintiffs requested that the Court order CBS2 to pay their attorneys' fees "incurred in filing, briefing and arguing this motion." Dkt. 188 at 14.

In its opposition, CBS2 argued that (1) the materials are protected by a federal reporter's privilege grounded in the First Amendment and the common law; (2) regardless of privilege, the subpoenas are unreasonable and, if enforced, would impose an undue burden on CBS2, a non-party to this lawsuit because (a) comity compels this court to consider and recognize the interests protected by the Illinois Reporter's Privilege Act, 735 ILCS 5/8-901, and (b) the burden on CBS2 if compelled to produce the material outweighs any benefit to Plaintiffs from production of the subpoenaed material; and (3) Plaintiffs are not entitled to recovery of their attorneys' fees. *See* Dkt. 191.

### C. The Order

In the Order at issue, the Magistrate Judge directed CBS2 to produce the subpoenaed materials by May 13 but denied Plaintiffs' request for an award of attorneys' fees. As grounds for the Order, the Magistrate Judge held (1) that the Seventh Circuit does not recognize a federal reporter's privilege and that the Illinois Reporter's Privilege Act is "not legally applicable" in a

2

federal-question case; (2) CBS2's argument regarding the burden imposed by compelled production was "simply an alternate route to a reporter's privilege" and was, "standing alone, . . . insufficient evidence of undue burden to overcome Plaintiffs' strong showing of substantial need," and (3) Plaintiffs were not entitled to recover their attorney's fees incurred in filing the Motion to Compel. Dkt. 206 at 3, 9, 10.

## LEGAL STANDARD

A district court must "modify or set aside any part of [a magistrate judge's non-dispositive] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate's . . . order is clearly erroneous or contrary to law."). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

## ARGUMENT

I.  **THE ORDER COMPELLING CBS2 TO PRODUCE ITS UNPUBLISHED NEWSGATHERING MATERIALS SHOULD BE SET ASIDE BECAUSE THE MATERIALS ARE PROTECTED BY A FEDERAL REPORTER'S PRIVILEGE**

According to the Magistrate Judge, "courts within the Seventh Circuit have consistently found that no such reporter's privilege exists" under federal law, and CBS2 therefore cannot withhold the subpoenaed materials on this basis. Dkt. 206 at 3. Respectfully, however, as CBS2 demonstrated in its opposition, the Seventh Circuit has *never* held whether a reporter's privilege exists in the civil context.[1] Rather, the Seventh Circuit has held only that a federal privilege does

---

[1] For brevity's sake, CBS2 hereby incorporates by reference its Opposition to Plaintiffs' Renewed Motion to Compel, summarizing here for the Court its more detailed description of the law in that memorandum. *See* Dkt. 191.

3

not apply to a Section 1782 proceeding in aid of a foreign criminal proceeding. *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003). Indeed, as even the court in *McKevitt* recognized, *every* circuit that *has* considered whether a federal privilege exists in the context of civil litigation has found that such a privilege exists. *Id*. at 532 (collecting cases); *see also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 716 (1st Cir. 1998); *Price v. Time, Inc.*, 416 F.3d 1327, 1343-48 (11th Cir. 2005); *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 287-88 (4th Cir. 2000); *Gonzales v. NBC*, 194 F.3d 29, 32-37 (2d Cir. 1998); *Shoen v. Shoen*, 48 F.3d 412, 414-18 (9th Cir. 1995); *Zerilli v. Smith*, 656 F.2d 705, 710-16 (D.C. Cir. 1981); *Miller v. Transam. Press, Inc.*, 621 F.2d 721, 725-27 (5th Cir. 1980); *Riley v. City of Chester*, 612 F.2d 708, 714-18 (3d Cir. 1979); *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 436-39 (10th Cir. 1977); *Cervantes v. Time, Inc.*, 464 F.2d 986, 990-95 (8th Cir. 1972).

CBS2 acknowledges, as it did before the Magistrate Judge, that courts in this district nevertheless have construed *McKevitt* to be controlling in the context of civil litigation, but CBS2 respectfully urges this Court to reconsider this interpretation and application of *McKevitt* and to hold that the Magistrate Judge erred in declining to find that the subpoenaed materials are protected from disclosure by a federal reporter's privilege grounded in the First Amendment and the common law.

II. **THE ORDER COMPELLING CBS2 TO PRODUCE ITS UNPUBLISHED NEWSGATHERING MATERIALS SHOULD BE SET ASIDE FOR THE INDEPENDENT REASON THAT IT FAILS PROPERLY TO ADDRESS THE BURDEN IMPOSED ON CBS2 BY COMPELLED PRODUCTION**

The Order carefully addresses the potential relevance of the video recordings to Plaintiffs' claims, but it largely sidesteps the arguments presented by CBS2 regarding the burden it will incur if compelled to produce its unpublished newsgathering materials. Specifically, the Magistrate Judge summarily dismissed "CBS2's articulated burden [a]s simply an alternate route

4

to a reporter's privilege," and concluded that, "standing alone," any such adverse impact on CBS2 or the public's interest in receipt of news on matters of public concern "is insufficient evidence of undue burden to overcome Plaintiffs' strong showing of substantial need." Dkt. 206 at 9. Respectfully, however, the Magistrate Judge clearly erred in casting aside the very real burden that CBS2 will face if compelled to produce these materials, for two reasons.

First, as CBS2 argued, regardless of whether the Seventh Circuit recognizes a *federal* reporter's privilege in this context, Illinois state law affords to newsgatherers a privilege against compelled disclosure of their sources and information obtained from them regardless of whether confidential or not, and regardless of whether published or unpublished. *See* 735 ILCS 5/8-901. Importantly, while the Illinois Reporter's Privilege Act is not *controlling* in a federal question case, as Judge Posner writing for the Seventh Circuit has instructed, "comity '*impels* federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 932 (7th Cir. 2004) (quoting *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (emphasis added)). Although comity "does not mean blind deference to 'States' Rights,'" it also does not "mean[] centralization of control over every important issue in our National Government and its courts." *Younger v. Harris*, 401 U.S. 37, 44 (1971). Indeed, as the Supreme Court cautioned, "anxious though it may be to vindicate and protect federal rights and federal interests," the federal government must "endeavor[] to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id*.

As Judge Posner made clear, while non-parties such as CBS2 are "not entitled to count on a state's privilege being applied in federal court," so long as there is no *substantial* cost to federal policy, "comity has *required* [courts], not to apply [] Illinois privilege[s], but to consider with

5

special care the arguments for quashing the subpoena on the basis of relative hardship" under Rule 45. *Nw. Mem'l Hosp.*, 362 F.3d at 932-33 (emphasis added); *see also Mem'l Hosp. for McHenry Cnty.*, 664 F.2d at 1061 (where "a state holds out the expectation of protection to its citizens [by way of privilege], they should not be disappointed by a mechanical and unnecessary application of the federal rule" (quotation omitted)). Pursuant to this guidance, courts must consider with special care subpoenas like those at issue here that seek information protected by a state-law privilege.

The Order, however, dismisses this controlling precedent, acknowledging only that CBS2 "*argues* that 'comity impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" Dkt. 206 at 7-8 (emphasis added). But, as explained, this is not merely CBS2's argument, but, rather, binding precedent. *See, e.g.*, *Nw. Mem'l Hosp.*, 362 F.3d at 932-33; *Mem'l Hosp. for McHenry Cnty.*, 664 F.2d at 1061. And, it is precedent that the Magistrate Judge properly followed in a prior case. *Wayne v. Kirk*, No. 13 C 8540, 2016 U.S. Dist. LEXIS 17692, at *17 (N.D. Ill. Feb. 9, 2016) (Finnegan, M.J.) (citing *Mem'l Hosp. for McHenry Cnty.*, 664 F.2d at 1061) (as matter of comity, in light of the Illinois Mental Health and Developmental Disabilities Confidentiality Act, denying, in part, motion to compel and entering protective order).

In lieu of applying this binding principle of comity in the present case, the Magistrate Judge instead focused on a single citation that CBS2 included in its opposition brief, in which a district court correctly observed that the Illinois Reporter's Privilege Act "would be another factor that would indicate that the burden imposed by disclosure would have been even greater," *see* Dkt. 206 at 8 (quoting *Davis v. City of Springfield*, No. 04-3168, 2009 WL 1161619, at *3 n.1 (C.D. Ill. Apr. 28, 2009)) – a proposition rejected by the Magistrate Judge because "[t]his

6

Court is not bound by dicta from a district court decision." Dkt. 206 at 8. Respectfully, however, this Court is bound by the Seventh Circuit's direction that comity obligates courts to consider interests underlying state privileges and to take "special care" when considering the burdens imposed by non-party subpoenas that seek materials privileged under state law. *Nw. Mem'l Hosp.*, 362 F.3d at 932-33. The failure here to give any weight whatsoever to the Illinois Reporter's Privilege Act is clear error.

This error was compounded in the Order insofar as the Magistrate Judge reasoned that applying the Seventh Circuit's command that "comity '*impels*'" lower courts to consider state law privileges, *Nw. Mem'l Hosp.*, 362 F.3d at 932 (emphasis added), would conflict with "the Seventh Circuit's pronouncement in *McKevitt* that a subpoena directed to the media is evaluated for reasonableness *in the same way as any other subpoena*." Dkt. 206 at 8 (emphasis added). Respectfully, however, by failing to apply the principle of comity as it would be applied in the context of any other subpoena, the Order actually contravenes *McKevitt*'s requirement that courts treat subpoenas for newsgathering material "in the same way as any other subpoena" under Rule 45.[2] Instead, the Order treats CBS2 differently because it is asserting a comity interest in this State's *reporter's* privilege, as compared to any other subpoenaed non-party asserting a comity interest in the consideration of any other state law privilege.

Second, precisely because the Magistrate Judge erroneously concluded that the question of a reporter's privilege grounded in state law was irrelevant, the Magistrate Judge failed to give

---

[2] *McKevitt* did not decide whether comity impels federal courts sitting in federal question jurisdiction to recognize and consider the Illinois Reporters Privilege Act for two reasons. First, the *McKevitt* court found that, under the statutory language of 28 U.S.C. § 1782 providing for discovery assistance to foreign tribunals, only "legally applicable" privileges were relevant. *McKevitt*, 339 F.3d at 533 (quoting 28 U.S.C. § 1782). As a state law privilege, the Illinois act was not "legally applicable." *Id.* And in any event, the subpoenaed party had waived the privilege by failing properly to raise it. *Id.*

7

proper consideration to the burden imposed on CBS2 by compelled production of its unpublished newsgathering materials. As case law from this district makes clear however, a court should consider "a number of case-specific factors":

> (1) the likelihood that compliance will result in production of the information, (2) whether the discovery is unreasonably cumulative or duplicative, (3) whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source, and (4) whether the burden of the proposed discovery outweighs its likely benefit.

*Taylor v. City of Chi.*, No. 14 C 737, 2015 U.S. Dist. LEXIS 146954, at *8-9 (N.D. Ill. Oct. 29, 2015) (citing, *inter alia*, *Patterson v. Burge*, No. 03 C 4433, 2005 U.S. Dist. LEXIS 1331, at *5-7 (N.D. Ill. Jan. 5, 2015); *Nw. Mem'l Hosp.*, 362 F.3d at 927). Specifically, as to the fourth factor, when addressing whether a Rule 45 subpoena imposes a burden on the subpoenaed non-party, "courts must assess more than mere 'administrative hardships' and, instead, should consider the *myriad interests* that production might compromise or injure." *Id.* at *9 (emphasis added); *see also McKevitt*, 339 F.3d at 535 (noting that district court on remand "might properly consider" whether the non-party would have to "abandon" story if forced to comply with subpoena).

In the Order, however, there is only passing mention of the burden imposed by the subpoena on CBS2 as a professional news organization, which is dismissed "[a]s simply an alternate route to a reporter's privilege, [and] one that relies upon the same rationales that courts in this circuit have rejected." Dkt. 206 at 9. In so doing, the Magistrate Judge failed to honor the requirement that a court consider the "myriad interests" at stake, including the impact of compliance with a subpoena on a journalist's ability to report the news, when considering the

8

burdens imposed by a third-party subpoena.³ Proper consideration of these interests necessarily leads to the conclusion that any potential benefits to these Plaintiffs from compelled disclosure of unpublished interviews with parties to the litigation are outweighed by the burden on CBS2 of being forced – not just in this case, but routinely in a wide swath of civil litigation if this ruling is upheld – to produce in civil litigation its unpublished newsgathering materials.

In this regard, the Magistrate Judge also erred by declining to weigh in the balance the many prior subpoenas served on CBS2 for its newsgathering material, instead ruling that, "absent any evidence as to how much time and expense CBS2 would incur to retrieve and produce the outtakes requested *in Plaintiffs' specific subpoenas*, especially as narrowed, such a generic assertion in no way demonstrates that the burden of compliance would be undue." Dkt. 206 at 9 n.4. In so holding, however, the Magistrate Judge ran afoul of the Seventh Circuit's decision in *Nw. Mem'l Hosp. See* 362 F.3d at 928-29. There, like the Plaintiffs in this case, the government argued that, because "it is seeking only a limited number of records . . . there would be no hardship to either the hospital or the patients from compliance." *Id.* at 928. But the Seventh Circuit rejected this argument as "unrealistic and incomplete": "What is true is that the administrative hardship of compliance would be modest. But it is not the only or the main hardship." *Id.* It then went on to consider those other important hardships, including the privacy interests at issue in that case. Because the Magistrate Judge failed to consider CBS2's institutional interests – as a professional news organization – in confidentiality as required by

---

³ Of course, by holding that these interests are irrelevant merely because *McKevitt* did not find a federal privilege in the context of that case, the Order again disadvantages CBS2 as compared to other subpoenaed non-parties. Indeed, the rejection of a privilege as a matter of federal law does not foreclose consideration of the newsgathering interests when considering whether the burden imposed on a non-party is unreasonable. *Nw. Mem'l Hosp.*, 362 F.3d at 928-29 (declining to create federal privilege for abortion records but considering pursuant to Rule 45 the "natural sensitivity that people feel about the disclosure of their medical records").

9

*Nw. Mem'l Hosp.* and, instead, focused on administrative hardships alone, the Order is clearly erroneous.

The Magistrate Judge placed great weight on the purported relevance of the unpublished materials to Plaintiffs' claims, but "non-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection." *Patterson*, 2005 U.S. Dist. LEXIS 1331, at *5. What's more, "[p]arties to civil litigation have no right to subpoena journalists or news organizations merely to satisfy curiosity or in the hope – however improbable – that something might turn up." *Mosely v. City of Chi.*, 252 F.R.D. 421, 437 (N.D. Ill. 2008). And, as is clear from Plaintiffs' own papers in this matter, they already possess, through the *published* footage of JC and Tyler and the contemporaneous written notes from investigators' interviews with each, what they purport to seek through the *unpublished* portions of these interviews.

As Plaintiffs acknowledge, JC and Tyler each spoke to "various" investigators regarding this incident, and those interviews are reflected in contemporaneous notes taken by the investigators. Dkt. 193 at 3. Although Plaintiffs argue that these notes are not "incontrovertible," they provide no basis on which to question the accuracy of such notes. *See SEC v. Sentinel Mgmt. Grp.*, No. 07 C 4684, 2010 U.S. Dist. LEXIS 127355, at *33 (N.D. Ill. Dec. 2, 2010) (risk of inaccuracy in notes "is reduced because of the sheer number of SEC lawyers who heard the witness, made contemporaneous notes, and had an opportunity to review the final interview summary for accuracy," whereas "far greater risk would be presented if a single attorney interviewed a witness, took few notes, and was later forced to provide a recollection of what the witness said, giving rise to grave dangers of inaccuracy and untrustworthiness") (internal marks omitted). Further, as CBS2 demonstrated in its opposition,

*see* Dkt. 191 at 10-11, Plaintiffs' papers are devoid of any real discussion of why the *published* portions of CBS2's interviews with JC and Tyler are insufficient to meet Plaintiffs' needs with respect to either individual.

In contrast, as CBS2 established through competent affidavit testimony, since November 2019 through the date of that affidavit, it received at least 22 third-party subpoenas in civil litigation seeking discovery of CBS2's unpublished newsgathering information, and its investigations team has spent "dozens of hours collecting and reviewing footage relevant to" these subpoenas. Dkt. 191 at 8 (quoting Dkt. 191-1, Declaration of Michelle Youngerman at ¶ 9). CBS2 takes seriously its role as a member of the Fourth Estate, and based on the Illinois reporter's privilege, the First Amendment, and the common law, CBS2 has a policy not to disclose its unpublished newsgathering material absent a court order, which is essential if CBS2 hopes to avoid eroding the trust it has "built with [its] sources and cultivated with the community." Dkt. 191-1 at ¶ 11. Indeed, it is for this reason that Illinois courts do not rush to compel news organizations to produce unpublished video, even if the sources in those videos are not anonymous. *See, e.g.*, *In re Arya*, 226 Ill. App. 3d 848, 859-62, 589 N.E.2d 832, 839-41 (4th Dist. 1992) (notes and videotapes); *Kelley v. Lempesis*, No. 13 CV 4922, 2015 U.S. Dist. LEXIS 107719, at *2 (N.D. Ill. Aug. 15, 2015) (unaired footage); *People v. Goldman*, 2005 BL 88496, at *2-3 (Ill. Cir. Ct., Lake Cnty. Sept. 1, 2005) (outtakes) (copy attached as <u>Exhibit 1</u>). In short, there is a difference between members of the public providing an interview to CBS2 knowing that it may be broadcast to the public and members of the public providing an interview to CBS2 knowing that it may be used in a court of law, and if CBS2's newsgathering materials are routinely turned into discoverable materials in civil litigation, CBS2 faces a very real threat that its ability to gather and report the news will be impeded. *See McKevitt*, 339 F.3d at 535 (noting

11

that district court on remand "might properly consider" whether the non-party would have to "abandon" story if forced to comply with subpoena).

The Magistrate Judge clearly erred in declining to consider the burden imposed on CBS2 by the forced disclosure of this newsgathering material.

## CONCLUSION

For the foregoing reasons, CBS2 respectfully requests that this Court set aside the portion of the Order compelling it to produce the unpublished newsgathering materials in question.

Dated: May 10, 2022                    Respectfully submitted,

                                       */s/ Steven G. Trubac*
                                       Brian A. Sher
                                       Steven G. Trubac
                                       BRYAN CAVE LEIGHTON PAISNER LLP
                                       161 N Clark Street, Ste 4300
                                       Chicago, IL 60601
                                       Phone: (312) 602-5000
                                       Fax: (312) 602-5050
                                       brian.sher@bclplaw.com
                                       steve.trubac@bclplaw.com

                                       Jay Ward Brown (*pro hac vice*)
                                       Ballard Spahr LLP
                                       1909 K Street NW, 12th Floor
                                       Washington, DC 20006-1157
                                       Phone: 202-661-2200
                                       Fax: 202-661-2299
                                       brownjay@ballardspahr.com

                                       *Counsel for non-party CBS Broadcasting Inc.*

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on May 10, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.

                  */s/ Steven G. Trubac*
                  Steven G. Trubac