**IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ASIA GAINES, for herself and as next friend of her minor child, "JC", | |
| Plaintiffs, | Case No. 19-cv-00775 |
| v. | Honorable Elaine E. Bucklo |
| THE CHICAGO BOARD OF EDUCATION; KRISTEN A. HAYNES; and JUANITA TYLER, | |
| Defendants. | |

## DEFENDANT JUANITA TYLER'S ANSWER TO AMENDED COMPLAINT

Defendant, JUANITA TYLER ("Juanita Tyler"), by and through her attorney Andrew Rima of Goldman, Ismail, Tomaselli, Brennan & Baum LLP, in answer to Plaintiff's Amended Complaint, states as follows:

1. On or about September 19 and 20, 2018, 9-year-old JC's elementary school homeroom teacher, Kristin Haynes, solicited, arranged for and permitted an unauthorized adult to enter George W. Tilton Elementary School for the purpose of corporally punishing JC, and Ms. Haynes actively assisted that individual in the assault and battery of JC in the hallway and boys' bathroom.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

2. The unauthorized adult, Juanita Tyler, 56, was a distant relative of JC's whom he did not know and whom his parents, who are JC's only legal guardians, had not authorized to enter their child's school, let alone physically discipline their son. Ms. Tyler was a total stranger to JC.

**ANSWER:**     Defendant denies the allegations contained in this paragraph. Ms. Tyler is the aunt of JC's father, Joseph Champ, and is therefore JC's great-aunt. Ms. Tyler came to Tilton

Elementary on the morning of September 20, 2018 at Joseph Champ's request. Ms. Tyler and JC knew each other from family events.

3.      Neither Ms. Haynes nor CPS requested JC's parents' consent or ever notified them either before or after the incident that their son was going to be or had been beaten by anyone.

**ANSWER:**    Defendant denies that JC was beaten on September 20, 2018, as alleged in this complaint. Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to any remaining allegations contained in this paragraph.

4.      Before the start of first period on September 20, Ms. Haynes and Ms. Tyler waited together for JC outside his homeroom classroom. When he went to enter the classroom, they physically grabbed him and dragged him down the hallway to the boys' bathroom. Ms. Haynes held the bathroom door open for Ms. Tyler and JC and, once they entered, she left them alone in the bathroom together and walked back to her classroom.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

5.      A few minutes earlier, Ms. Haynes had given two large belts to Ms. Tyler to beat JC with. She kept the belts stored in a closet in her classroom and periodically threatened students with them.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

6.      Once ensconced in the boys' bathroom, Ms. Tyler beat JC over his clothing with both belts, landing blows on his back, buttocks and legs, breaking the skin and leaving abrasions on his body.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

7.      After beating him, she brought JC back to Ms. Haynes' classroom, pushed him

towards his seat, and handed the belts back to Ms. Haynes. In tears in front of all the other students in his class, JC sat at his desk all morning and sobbed uncontrollably, publicly shamed and humiliated by the experience.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

8.    As a result of this incident, JC now suffers severe and lasting Post Traumatic Stress Syndrome and is receiving intensive treatment.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

## JURISDICTION AND VENUE

9.    This case is brought under 42 U. S. C. § 1983 to redress the deprivation under color of law of plaintiffs' rights as secured by the U. S. Constitution, as well as his rights under state law.

**ANSWER:**    Defendant admits that Plaintiff brings this action under 42 U.S.C. § 1983 and under state law but denies that Plaintiff has any such claims herein. Defendant denies any remaining allegations in this paragraph.

10.    This Court has subject matter jurisdiction under 28 U. S. C. §§ 1331 and 1367. The Court has supplemental jurisdiction over plaintiffs' state law claims.

**ANSWER:**    Defendant does not contest jurisdiction.

11.    Venue is proper under 28 U. S. C. § 1391(b). All parties reside in the Northern District of Illinois, and the events giving rise to the claims in this case all occurred within the District.

**ANSWER:**    Defendant does not contest that venue is proper.

## PARTIES

12.    At the time of all relevant events, plaintiff JC was a nine-year-old boy and a fourth-grade student in Ms. Haynes' fourth grade class at George W. Tilton Elementary School, 223 N.

Keeler Avenue in Chicago, 60624. He has attended the school since kindergarten. JC resided full-time with his mother and siblings at 3817 Westend Avenue, Chicago, Illinois, 60624.

**ANSWER:**     Defendant admits only that JC was a fourth-grade student in Defendant's classroom at George W. Tilton Elementary School located at 223 N. Keeler Avenue, Chicago, Illinois 60624. Upon information and belief, Defendant admits that JC attended the school since kindergarten. Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to any remaining allegations contained in this paragraph.

13.     At the time of all relevant events, plaintiff Asia Gaines was the biological mother of JC and resided with him and his siblings at 3817 Westend Avenue, Chicago, Illinois, 60624. A single parent, Ms. Gaines worked full-time, six days per week as a cook to support her family. She and her younger sister also took care of their aging and ill mother.

**ANSWER:**     Upon information and belief, Defendant admits that Asia Gaines ("Plaintiff") is the biological mother of JC. Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to any remaining allegations contained in this paragraph.

14.     At all relevant times, Asia Gaines and Joseph Champ, JC's biological father, were the sole legal guardians of JC.

**ANSWER:**     Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to the "sole" guardianship of JC.

15.     Prior to September 20, 2018, JC was a cheerful, happy boy who liked to sing, dance, and play and watch sports, especially football, wrestling and boxing.

**ANSWER:**     Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to the allegations contained in this paragraph.

4

16.     Nine-year-old JC was hardly "a problem student" in Ms. Haynes' classroom – far from it. On information and belief, the only other time Ms. Haynes saw fit to try to discipline him is when he forgot to put his book bag on the hook in the classroom; for that, Ms. Haynes became upset and sent him to the principal's office. On the day that JC was physically punished, he was punished either for something he did not do or for laughing in class with another boy the previous day.

**ANSWER:**     Defendant denies.

17.     At the time of all relevant events, defendant Kristen A. Haynes was employed by Chicago Public Schools as a classroom teacher and was assigned to George W. Tilton Elementary School, 223 N. Keeler Avenue in Chicago. Ms. Gaines was JC's fourth grade homeroom teacher with whom he spent most or all of each school day. Ms. Haynes resides at 1715 W. Lake Street, Chicago, IL, 60612.

**ANSWER:**     Defendant lacks sufficient information or knowledge to admit or deny.

18.     At the time of all relevant events, defendant Juanita Tyler was a childhood friend of Kristen Haynes and a remote relative of JC whom he did not know and was not acquainted with. Ms. Tyler resides at 3638 W. Thomas Street, 2nd floor, Chicago, IL, 60651.

**ANSWER:**     Defendant denies. Ms. Tyler is the aunt of JC's father, Joseph Champ, and is therefore JC's great-aunt. Ms. Tyler came to Tilton Elementary on the morning of September 20, 2018 at Joseph Champ's request. Ms. Tyler and JC knew each other from family events.

19.     When Ms. Gaines actively solicited and physically assisted Juanita Tyler, age 56, in moving, sequestering and corporally punishing JC inside Tilton Elementary School on September 20, 2018, she was at all times acting under color of law and within the scope of her employment as a teacher for the Chicago Public Schools.

**ANSWER:** Defendant denies that she moved, sequestered, or corporally punished JC. Defendant lacks sufficient information about what Ms. Gaines did to JC on September 20, 2018.

20.     At the time of all relevant events, defendant Chicago Board of Education was a unit of local government responsible for the governance and oversight of Chicago Public Schools (or "CPS"), which is School District 299 in the City of Chicago, County of Cook, State of Illinois.

**ANSWER:** On information and belief, Defendant admits that Defendant Chicago Board of Education is a unit of local government responsible for the governance and oversight of Chicago Public Schools ("CPS") which is School District 299 in the City of Chicago, Cook County, Illinois.

### FACTS RELEVANT TO ALL CLAIMS

*Ms. Haynes Had a History of Corporal Punishment That City of Chicago Did Not Address*

21.     Prior to September 20, 2018, Ms. Haynes had a history of engaging in corporal punishment with her students. She had regularly physically punished other students in her class with belts before she punished JC on September 20. She had also regularly threatened numerous other students to "pull out the belt" and use it on them.

**ANSWER:** Defendant lacks sufficient information to admit or deny.

22.     On information and belief, Ms. Haynes acted this way because she believed she would not be disciplined or would suffer any adverse employment consequences. In fact, she had not been disciplined in any way for administering previous "whoopings" or threats of whoopings with her belts.

**ANSWER:** Defendant lacks sufficient information to admit or deny.

23.     Sylvia Yvette Hodge, the current Principal of Tilton, has been the principal for several years; for all of her tenure, Ms. Haynes has been a teacher at Tilton. On information and belief, Ms. Hodge was well-aware that Ms. Haynes had used the belt and threatened to use the belt on her students on numerous prior occasions, did not object, and never reprimanded or disciplined

Ms. Haynes.

**ANSWER:**    Defendant lacks sufficient information to admit or deny.

24.    On information and belief, the Chicago Public Schools and the Chicago Board of Education did not ever discipline Ms. Haynes for these prior acts and threats of physical punishment. This failure served to encourage and authorize her to repeat her actions and to engage in more brazen arrangements for physical punishment, this time with JC as her victim.

**ANSWER:**    Defendant lacks sufficient information to admit or deny.

25.    Days before September 20, 2018, Ms. Gaines came to the school to pick her children up early. She reported to the school office first, then went to Ms. Haynes' classroom. Ms. Hodge, the Principal, accompanied her to Ms. Haynes' classroom.

**ANSWER:**    Defendant lacks sufficient information to admit or deny.

26.    Inside the classroom, Ms. Gaines spoke to Ms. Haynes. Ms. Hodge, JC and his sister were also present for this conversation. During the conversation, Ms. Haynes complained that JC "always tries to get the last word in." During the conversation, Ms. Gaines gave Ms. Haynes her phone number and JC's father's phone number.

**ANSWER:**    Defendant lacks sufficient information to admit or deny.

27.    Ms. Haynes also said during this conversation, referring to JC, "If you ever want to whip his butt, I got something for you." At this point, Ms. Haynes then opened the closet door in her classroom to reveal two, large belts hanging up in the middle of the closet. She said they were used when the children get out of line.

**ANSWER:**    Defendant lacks sufficient information to admit or deny.

28.    Ms. Hodge, who was still standing with Ms. Haynes and Ms. Gaines, heard these comments and saw the belts hanging in the closet. She did not say or do anything to correct Ms.

7

Haynes' statements.

**ANSWER:**     Defendant lacks sufficient information to admit or deny.

### *Haynes Arranges for an Unauthorized Stranger, a convicted batterer, to Corporally Punish JC Without Consent from or Notice to His Parents*

29.     On or about September 19, 2018, on information and belief JC had been laughing with another boy in Ms. Haynes' classroom and got in trouble for it with Ms. Haynes.

**ANSWER:**     Defendant lacks sufficient information to admit or deny.

30.     On that date, Ms. Haynes called JC's father, Joseph Champ, and told him JC had been acting up or being disruptive in that he was playing around, had an attitude, and folded his arms when Ms. Haynes spoke to him. She put JC on the phone, and Mr. Champ talked to him sternly. Ms. Haynes wanted him to come in, but he could not come in immediately because of work.

**ANSWER:**     Defendant lacks sufficient information to admit or deny.

31.     On or about September 19, Ms. Haynes contacted Ms. Tyler over Facebook through an intermediary, spoke to her on the phone and invited her to come to the school to corporally punish and abuse JC. She did not ask JC's mother or father for their permission or consent to discipline him in any way.

**ANSWER:**     Defendant admits contact with Defendant Tyler via social media. Defendant denies the remaining allegations contained in this paragraph.

32.     Ms. Haynes somehow knew or learned that Juanita Tyler is a distant relative of JC's on his father's side (known as "Angel"). In fact, Ms. Tyler is JC's paternal great aunt – the sister of the aunt or "mother" who raised Mr. Champ after his biological mother died when he was very young. However, JC had met Ms. Tyler only once when he was six-years-old. His mother, Ms. Gaines, has only met her approximately 3-4 times in her life. Ms. Tyler was, for all intents and

purposes, a total stranger to JC.

**ANSWER:**     Defendant admits she is a relative of JC and his family. Defendant otherwise denies the remaining allegations in this paragraph. Defendant has met JC on multiple occasions at family events, and JC and his sister, NC, were familiar with Defendant.

33.     Ms. Tyler is not listed on JC's emergency contact list at the school. She is not otherwise authorized to have any contact with JC. No one from the school notified JC's mother or father that Ms. Tyler had been asked to come or would be coming to the school.

**ANSWER:**     Defendant lacks sufficient information to admit or deny whether she was listed on JC's emergency contact list at Tilton Elementary at the relevant time. Defendant denies the remaining allegations in the paragraph. Defendant came to the school at the express request of Joseph Champ, JC's father.

34.     Ms. Haynes and Ms. Tyler grew up together in the same neighborhood and were friends or friendly as children.

**ANSWER:**     Defendant and Defendant Haynes were acquaintances and both grew up in Chicago, Illinois. Defendant denies that the statements in this paragraph accurately characterize her relationship with Defendant Haynes.

35.     At the time Ms. Haynes solicited Ms. Tyler to corporally punish JC, Ms. Tyler had a criminal background of battery. Before the incident of September 20, 2018, she had been charged with child endangerment once and with domestic battery three times and was convicted of battery at least once, in 2005.

**ANSWER:**     Defendant denies as this paragraph does not accurately characterize the record.

36.     On information and belief, Ms. Haynes was aware of Ms. Tyler's criminal history.

**ANSWER:**     Defendant denies.

9

***Haynes Lets the Unauthorized Stranger, a convicted Felon, into Tilton Elementary School to Beat JC With Her Belts***

37.     On information and belief, Ms. Tyler obtained a visitor's pass from the main office in order to be authorized to be in the school building on September 20; Ms. Haynes assisted Ms. Tyler in obtaining the visitor's pass. In the alternative, Ms. Haynes simply let her in without any visitor's pass.

**ANSWER:**     Upon information and belief, Defendant admits that she was granted a visitor's pass by the main office to enter the school. Defendant denies any remaining allegations contained in this paragraph.

38.     A few minutes before 9:00AM on Thursday, September 20, 2018, JC and his sister, who is in fourth grade and also in Ms. Haynes' class, had gotten breakfast in the school cafeteria and were on their way to Ms. Haynes' classroom, Room 204.

**ANSWER:**     Defendant lacks sufficient information to admit or deny.

39.     As JC and his sister finished climbing the steps and walked toward their classroom, they noticed Ms. Haynes and a woman whom they believed they had never seen before standing together in the hallway just outside the door to Ms. Haynes' classroom.

**ANSWER:**     Defendant admits that JC and his sister both interacted with Defendant near the classroom. Defendant denies the remaining allegations contained in this paragraph.

40.     As JC walked past the women on his way to the classroom door, the stranger physically grabbed and stopped him. She grabbed his jacket and the cloth handle on the back of his backpack and pulled upwards. She did not introduce herself or say anything to him before she accosted him.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

41.     Ms. Haynes continued to stand next to the strange woman, watching JC and what

was happening. She did not say or do anything to intervene.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

42.    JC spoke first, asking the two women in response to the stranger accosting him, "What did I do?" His teacher responded, "You know what you did." JC asked again, genuinely, "What did I do??" Ms. Haynes repeated her previous answer. JC asked a third time, and no one answered.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

43.    At this moment, the stranger hit JC hard in the mouth with the palm of her right hand, while holding tightly to his right wrist with her left hand. The slap hurt him.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

44.    Ms. Haynes then said, "Are you trying to call me a liar?" JC answered by asking a fourth time, "What did I do??"

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

45.    In response, the stranger hit JC in the mouth a second time while still holding his wrist. Ms. Haynes did not intervene.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

46.    JC then tried to pull away from the stranger who was holding him tightly. When he did this, Ms. Haynes came close and grabbed his other wrist (i.e., his left), and the two women began physically pulling JC down the hallway in the opposite direction from the classroom while JC was attempting to go towards his classroom.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

47.    The two women then lifted JC off his feet by his wrists and carried him down the hallway to the second-floor boys' bathroom. JC is small for his age.

11

**ANSWER:**      Defendant denies the allegations contained in this paragraph.

48.      When they reached the boys' bathroom, Ms. Haynes let go of JC's wrist and opened the bathroom door so that the stranger could bring JC into the bathroom.

**ANSWER:**      Defendant denies the allegations contained in this paragraph.

49.      No one else was present in the boys' bathroom. Once the stranger brought JC into the bathroom, Ms. Haynes left and returned to her classroom, leaving JC alone and sequestered in the bathroom with the stranger, unsupervised by herself or any other CPS staff member.

**ANSWER:**      Defendant denies the allegations contained in this paragraph.

50.      Once the stranger and JC were alone in the bathroom, the stranger commanded him, "Pull down your pants!"

**ANSWER:**      Defendant denies the allegations contained in this paragraph.

51.      JC did not pull down his pants. When he refused, the stranger lost her temper and began striking JC hard with two, large, leather belts, one laid on top of the other, that she held in her right hand.

**ANSWER:**      Defendant denies the allegations contained in this paragraph.

52.      JC is small, only 4'5" tall and approximately 66 pounds.

**ANSWER:**      Defendant lacks sufficient knowledge to admit or deny.

53.      The belts belonged to Ms. Haynes, and she had provided them to the stranger that morning for the purpose of beating JC. Ms. Haynes stored the belts in a closet in her classroom and, occasionally, threatened her students with them. One belt is black, and the other is brown. Both belts are wide and thick and have large, metal or silver buckles.

**ANSWER:**      Denied.

54.      The stranger hit JC with the belts approximately 11 or 12 times before pausing and

shouting again, "Pull down your pants!"

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

55.    JC did not pull down his pants but screamed, "I want my mama!" In response, the stranger then resumed hitting JC with the belts, striking another 5-10 times approximately, then slapped him on his mouth with her left hand a third time and said, "*I* am your mama!"

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

56.    JC was crying in the bathroom the whole time that the stranger was abusing him. He kept saying over and over, each time she hit him, "I want my mama."

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

57.    The stranger continued to beat JC with the belts. The stranger hit JC with the belts a total of approximately 20-30 times. JC kept hearing the "whoosh" sound of the belts as she swung them through the air before they landed on his body.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

58.    Her blows landed on his back, his left shoulder, on his buttocks and on the back of his right leg. Most of the blows were to his back.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

59.    When the stranger finished hitting JC, she said to him, "Respect Ms. Haynes because we grew up together." She also said, "Ms. Haynes said you were laughing."

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

60.    Ms. Tyler's beating physically injured JC. Even though JC was fully clothed in his school uniform - a yellow, short-sleeved, button-up shirt, long khaki pants and black shoes – when the stranger hit him, the stranger's blows were so hard that they broke the skin on JC's back in the area of his left shoulder blade and left red abrasions and red areas on other parts of his body. There

were abrasions on his back and his right inner thigh. His buttocks were bright red.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

61.     The physical force used against JC was totally unnecessary and unreasonable, but the pain and physical marks from Ms. Tyler's beating were mild compared with the psychological trauma from the incident, as described below.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

### JC's Spirit is Crushed

62.     After the stranger finished hitting JC with the belts, she took his arm, held onto it, and brought him back to Ms. Haynes' classroom.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

63.     On the way back to the classroom through the hallway, the stranger hit JC with the belt again on his butt after Ms. Haynes claimed that he was laughing as he walked down the hall.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

64.     When JC entered Ms. Haynes' classroom door and was walking towards his desk to sit down, the stranger told him to go sit down and pushed him forwards from behind by pushing his backpack.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

65.     Then Ms. Tyler passed the belts back to Ms. Haynes.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

66.     Ms. Haynes then threatened JC, "You better be good because the lady is going to come back up at 1:00PM."

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

67.     When JC walked into the classroom, he was crying. When he sat down at his desk, he was crying.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

68.     JC sat at his desk and cried non-stop until lunchtime at 11:45AM, totally humiliated, crushed, broken and powerless.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

### JC's Parents Learn of the Abuse

69.     Neither Ms. Haynes nor anyone from Tilton Elementary ever called JC's mother or father on the telephone to inform them that JC had been disciplined at school, let alone physically punished, humiliated, and made to sit at his desk all morning in tears and shame.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

70.     Ms. Gaines first learned of the incident at approximately 4:00PM from her sister, who picked JC up from school that day because Ms. Gaines had to work.

**ANSWER:**     Defendant denies.

71.     Mr. Champ first learned of the incident at approximately 4:00PM from JC, who called him to tell him what happened.

**ANSWER:**     Defendant denies.

72.     Ms. Gaines is the guardian of record for all matters relating to JC at Tilton Elementary. She always fills out all school paperwork, and she is the parent with whom the school usually communicates regarding JC. Ms. Haynes knew this; she talked with her just days before the incident and had her phone number.

**ANSWER:**     Defendant lacks sufficient information to admit or deny.

73.     Mr. Champ is also on the school's contact list. The teachers and staff had his phone number; Ms. Haynes called him the day before the incident on September 19.

**ANSWER:**     Defendant lacks sufficient information to admit or deny.

74.     No one from the school ever called JC's mother or father to inform them that their

15

children had been disciplined.

**ANSWER:**     Defendant denies.

75.     No one from the school ever notified JC's mother or father that Juanita Tyler or anyone was going to be permitted to enter the school to discipline JC.

**ANSWER:**     Defendant denies.

76.     Nor did Ms. Tyler contact JC's mother or father either before or after the incident to let them know of her involvement.

**ANSWER:**     Defendant denies that there was any incident to report.

77.     When Ms. Gaines learned of the incident through her sister at approximately 4:00PM, she immediately contacted Ms. Haynes, then texted her, then eventually spoke with her. Ms. Haynes apologized to Gaines and wanted to talk further but Ms. Gaines declined.

**ANSWER:**     Defendant lacks sufficient information to admit or deny.

78.     Ms. Gaines was outraged that someone had touched and beaten her child, outraged that his teacher had allowed a total stranger to beat him, and outraged that that she was never contacted before or after the incident. JC's father, Mr. Champ, felt the same way.

**ANSWER:**     Defendant denies.

79.     Neither JC's mother nor his father engage in, approve of or condone the physical punishment of their children.

**ANSWER:**     Defendant denies. Defendant and her family members personally observed Ms. Gaines and other relatives beating JC prior to September 20, 2018.

80.     Ms. Gaines then called the police, contacted the Illinois Department of Children and Family Services, and took her son to the emergency room for treatment.

**ANSWER:**     Defendant lacks sufficient information to admit or deny.

16

81.     The next day, September 21, 2018, the Chicago police arrested Ms. Haynes at school, and the Cook County State's Attorney's Office charged her with child endangerment.

**ANSWER:**     Defendant lacks sufficient information to admit or deny.

82.     On September 28, 2018, Chicago police arrested Ms. Tyler, and the Cook County State's Attorney's Office charged with domestic battery.

**ANSWER:**     Defendant admits that she was arrested by Chicago police.

### *Ms. Haynes' and CPS' Actions and Inaction in Allowing Ms. Tyler into the School and Actively Assisting Her in Beating 9-year-old JC Severely Traumatized Him*

83.     The beating that Ms. Haynes solicited, invited, arranged, facilitated and actively assisted in caused JC immediate, severe, and lasting emotional and psychological distress and injury.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

84.     In a place where professional adults were entrusted to do their jobs to keep JC safe, a total stranger and convicted batterer was allowed the access and power to beat JC, traumatizing him. JC's mother and father are devastated that they were not able to protect their son.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

85.     Before the incident, 9-year-old JC was a cheerful, playful, fun-loving, happy-go-lucky little boy. He had never experienced any kind of emotional trauma or abuse in his life.

**ANSWER:**     Defendant denies the allegations contained in this paragraph. Defendant and her family members personally observed Ms. Gaines and other relatives beating JC prior to September 20, 2018.

86.     Since the incident, he is no longer happy and feels sad and bad all the time.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

87.     Since and as a result of the incident, JC has been twice diagnosed with Post

Traumatic Distress Disorder ("PTSD") by different medical providers. JC has had to undergo extensive, partial hospitalization requiring him to miss a substantial number of school days. He has also undergone and continues to undergo extensive psychological evaluation, and he is expected to require extensive, long-term, psychotherapy.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

88.    On or about October 9, 2018, JC's primary care physician diagnosed JC with PTSD. Subsequently, the hospital where he received intensive treatment and evaluation diagnosed him with a related trauma disorder and, later, with PTSD. He has since been evaluated and treated by still other providers.

**ANSWER:**    Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to the allegations contained in this paragraph.

89.    Providers have prescribed multiple medications for anxiety and insomnia for JC, and he has been started on them, with adjustments for dosage.

**ANSWER:**    Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to the allegations contained in this paragraph.

90.    The night of the incident JC wet his bed, and he has been wet his bed every night since then.

**ANSWER:**    Denied.

91.    In the days immediately following the incident, JC had multiple panic attacks (breathing hard, heart pounding), threw up repeatedly, was highly emotional, cried frequently, and was uncharacteristically taciturn.

**ANSWER:**    Defendant denies she assaulted JC. Defendant otherwise lacks sufficient information to admit or deny.

92.     JC's sleep is affected. He has been unable to go to sleep until 1:00 or 2:00AM every night and must get up at 7:45 for therapy since the incident. He does not want to go to sleep because, he says, "I'm scared." As a result of not being able to go to sleep, he is tired every day and has difficulty concentrating. JC had no history of sleep problems before the incident.

**ANSWER:**     Defendant lacks sufficient information to admit or deny.

93.     Since the incident, JC's primary care doctor prescribed prescription-only sleep medication for JC, who is only 9-years-old.

**ANSWER:**     Defendant denies assaulting JC. Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to the remaining allegations contained in this paragraph.

94.     JC now needs to have the TV on constantly; otherwise, he sees "the bogeyman."

**ANSWER:**     Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to the allegations contained in this paragraph.

95.     Since the incident, JC, a small boy for his age to begin with, has been eating less. He is not hungry after therapy or school.

**ANSWER:**     Defendant denies she assaulted JC. Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to the remaining allegations contained in this paragraph.

96.     JC is extra-sensitive to sounds and "jumpy" when he hears unfamiliar sounds.

**ANSWER:**     Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to the allegations contained in this paragraph.

97.     JC repeatedly vocalizes that he is afraid that Ms. Tyler is going to come back and "whoop" him again.

**ANSWER:**    Defendant denies assaulting JC. Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to the remaining allegations contained in this paragraph.

98.    Moreover, JC was publicly humiliated by his teacher and another adult before his classmates. At school, fellow students now call JC a "baby" and a "punk." He was not bullied by other students before this incident. In October 2018, even another teacher laughed at him. The whole school now knows what happened to JC, who as a result is totally embarrassed and humiliated.

**ANSWER:**    Defendant denies assaulting JC. Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to the remaining allegations contained in this paragraph.

99.    On the fourth day following the beating, JC bravely went back to school for the first time since the incident, but the experience was too painful, and he had to call his mother and go home early.

**ANSWER:**    Defendant denies.

100.    Since completing partial hospitalization and despite the risk of re-traumatization, JC has now returned full-time to Tilton, his neighborhood school, because CPS refuses to pay for transportation to a new school. Since his return, students have bullied JC in light of the incident while one teacher laughed at him, and his new homeroom teacher is openly impatient with him.

**ANSWER:**    Defendant denies assaulting JC. Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to the remaining allegations contained in this paragraph.

101.    The Board of Education is liable for further injuring JC by exposing him to re-

traumatization and failing to mitigate its damages by paying the cost of transportation to another elementary school, a cost his low-income mother cannot afford.

**ANSWER:**    Defendant denies.

102.    JC was a happy, playful, trusting child in a close, loving family. Prior to the incident, he had not suffered any form of trauma. That all changed with defendants' actions on September 20, 2018.

**ANSWER:**    Defendant denies the allegations contained in this paragraph. Defendant and her family members personally observed Ms. Gaines and other relatives beating JC prior to September 20, 2018.

103.    JC exhibited none of these behaviors prior to September 20, 2018.

**ANSWER:**    Defendant denies.

104.    JC now continues to experience and exhibit, unabated, these and other signs of severe emotional and psychological trauma and distress.

**ANSWER:**    Defendant denies assaulting JC. Upon reasonable inquiry, the knowledge and information readily available to Defendant renders her unable to form a belief as to the remaining allegations contained in this paragraph.

105.    As a direct result of defendants' conduct, JC now requires high quality, long-term, costly, psychological care and counseling in order to cope with the long-term, psychological injuries caused by defendants' terrorizing conduct.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

106.    Defendants' shocking actions of causing an unauthorized convicted felon to enter JC's school and classroom to repeatedly slap and beat JC with belts in front of his peers constituted serious abuses of power and authority.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

107.     Defendants' actions were directed at a 9-*year-old child*. JC's sensitivity and vulnerability to such trauma-inducing violence was or should have been known to defendants.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

### *In Beating JC, Ms. Tyler Was Acting as Ms. Haynes' Agent*

108.     In addition to her own direct actions and omissions in accomplishing the beating of JC, Ms. Haynes, JC's teacher who had responsibility for his classroom discipline, designated Ms. Tyler, her childhood friend, to act for her and on her behalf to punish the in-class behavior of her student, JC. Ms. Haynes acted through Ms. Tyler, such that Ms. Tyler's actions were her actions, and subsequent to the incident she fully approved of and endorsed Ms. Tyler's actions.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

109.     Both in writing and orally, Ms. Haynes asked Ms. Tyler to punish JC for her, Ms. Tyler accepted that request, coming to the school and beating JC, and both acted according to their mutual understanding that Ms. Haynes would be in control; the school was Ms. Haynes' workplace where she had professional and legal responsibility for JC, she had to and did let Ms. Tyler into the school, she possessed and provided the instrumentalities of punishment to Ms. Tyler, she took them to a specific place for the beating, and she accepted charge of JC back from Ms. Tyler after she beat him.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

110.     Ms. Haynes controlled the manner and method of Ms. Tyler's discipline. She invited her to the school on a date and time certain and allowed her to enter the building. She provided her with the belts with which to beat him. She arranged with her to meet JC outside her classroom door. She helped her drag him down the hallway. She held the bathroom door open so that she could bring him inside. She then sequestered and left them alone in the bathroom so that

22

Ms. Tyler could beat him. Ms. Tyler was acting for Ms. Haynes' in Ms. Haynes' school and in her classroom, which Ms. Haines controlled.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

111.    Ms. Tyler had the power to affect and has affected Ms. Haynes' legal relationship with JC in that the amount of force she used against him was unreasonable in violation of JC's rights.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

### *In Beating JC, Defendants Acted Unreasonably*

112.    Though a teacher is permitted to use reasonable corporal punishment with a student, the types and amount of corporal punishment that defendants used against JC were not reasonable.

**ANSWER:**    Defendant denies.

113.    Ms. Tyler was not a CPS employee and was not providing any service to JC. Without consent from or notification to JC's parents, Ms. Haynes illegally delegated her duty to maintain school discipline in her classroom to an adult who was not legally authorized to punish JC or even be in the school building and whom she did not supervise. She abdicated her legal responsibility not only for discipline but for the safety and health of JC.

**ANSWER:**    Defendant admits only that Defendant Tyler was not a CPS employee. Defendant denies the remaining allegations contained in this paragraph.

114.    The amount of force that defendants used against JC was not reasonable.

**ANSWER:**    Defendant denies she assaulted JC.

115.    The amount of force used was not needed to maintain safety of other students. It was not used in self-defense of school personnel or the defense of anyone's property. It was not for the purpose of supervision of JC or other students. It was not simply for the purpose of removing him from the classroom for disruptive behavior. The type and amount of corporal

23

punishment that defendants inflicted on JC was not reasonable under the circumstances.

**ANSWER:**    Defendant denies she assaulted JC.

116.    Ms. Tyler slapped JC, beat him with belts, kept him in a painful position for a prolonged time, and intentionally inflicted bodily harm on him, all in direct violation of state and federal law.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

117.    The manner, type and amount of corporal punishment was likely to cause and did cause lasting injury to JC. Ms. Haynes recklessly arranged for an adult who was a total stranger to JC to inflict severe physical punishment on him without any supervision and without consent from or notification to his parents.

**ANSWER:**    Defendant denies she ever assaulted JC. Defendant denies she was a stranger to JC. Further, Defendant had consent from JC's father, Joseph Champ, to come to Tilton Elementary and speak with JC on the morning of September 20, 2018.

118.    Ms. Haynes did not provide any due process to JC or his parents before deciding to carry out and carrying out this punishment.

**ANSWER:**    Defendant denies ever assaulting JC.

### *Defendants' Conduct Was Willful and Wanton or Grossly Negligent*

119.    Defendants' conduct under this count merits an award of punitive damages to plaintiffs. Defendants' shocking actions toward 9-year-old JC constituted an abuse of power and authority.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

120.    Ms. Haynes acted without good faith and with malice, willfulness or wantonness in inflicting assault and battery on JC that went beyond corporal punishment, was not reasonable under the circumstances and was likely to cause lasting injury.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

121.    The method of corporal punishment she adopted was unreasonable, as was the amount of force employed under the circumstances, where JC was not a threat to anyone's safety, had not struck another student, was not repeatedly disruptive in class, Ms. Haynes had not talked with him or his parents first, and he suffered lasting injury.

**ANSWER:**    Denied.

122.    Defendants' conduct toward plaintiffs was intentional, undertaken with willful, wanton and reckless disregard for the safety and rights of others. Defendants acted with actual intention or with a conscious disregard or indifference for the consequences when the known safety and health of JC was involved. They acted with actual malice, with deliberate violence, willfully or with such gross negligence recklessness as to indicate a wanton disregard of the rights of others.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

123.    In light of the character of defendants' actions toward JC and the lasting or permanent psychological injury they have caused to him, defendants' conduct merits an award of punitive damages.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

## COUNT I – 42 U. S. C. § 1983 *MONELL* POLICY CLAIM AGAINST THE CHICAGO BOARD OF EDUCATION

124.    Plaintiff Asia Gaines, as next friend of her son JC, re-alleges all paragraphs 1-123 above and incorporates them into this count, including the *Monell*-related allegations of paragraphs 21-28. She also incorporates into this count paragraphs 145-149 and 150-154 below. JC asserts this claim against defendant Chicago Board of Education.

**ANSWER:**    Defendant restates and re-alleges each of its responses to the preceding paragraphs of the Complaint as though fully set forth herein.

25

125.    Defendant Haynes' use of excessive and unreasonable force and corporal punishment against her student JC was directly and proximately caused by one or more of the following specific, long-standing, interrelated, widespread practices and/or customs of the Chicago Board of Education and CPS: 1) a failure to supervise, monitor, reprimand, and/or correct CPS teachers and staff like Ms. Haynes who engage in unreasonable or excessive corporal punishment with students in grades K - 8; 2) a failure to properly investigate and/or effectively discipline credible allegations/incidents of CPS teachers and staff engaging in unreasonable or excessive corporal punishment with students in grades K - 8; 3) a failure to enforce and/or otherwise ensure compliance with official CPS policy prohibiting the use of unreasonable or excessive corporal punishment of students in grades K - 8; and/or 4) a failure to properly train CPS teachers and staff on the law and official CPS policy prohibiting the use of unreaonable [sic] or excessive corporal punishment of students in grades K - 8. Each of these policies existed for more than ten years prior to September 20, 2018 ("the *Monell* period").

**<u>ANSWER:</u>**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

126.    In particular, the Board of Education has a long-standing, pervasive practice and custom of failing to adequately investigate, intervene with and discipline or otherwise correct teachers and staff such as Ms. Hnyes [sic] when they use or threaten to use unreasonable or excessive corporal punishment against children grades K – 8.

**<u>ANSWER:</u>**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

127.    For example, in 2009, the last year in which this Chicago Board of Eucation/CPS [sic] was made public, CBS 2 Chicago investigative reporters documented 818 allegations of school beatings and mistreatment dating back to 2003, including beatings with belts, broomsticks, yardsticks, wooden paddles, and other implements. While 568 or 69 percent of these complaints were sustained, the Board of Education only terminated a mere 24 people or 4 percent of all CPS employees found to have engaged in physical abuse/corporal punishment. (https://chicago.cbslocal.com/2019/02/06/george-tilton-elementary-school-student-beaten-belt/ last checked April 1, 2019). Moreover, many of those who were terminated were later re-hired as Chicago charter school teachers.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

128.    The Board of Education's failure to discipline Ms. Haynes and other CPS teachers and staff for unreasonable corporal punohsment [sic] of students directly encouraged, authorized and caused Ms. Haynes' conduct toward JC in this instance. Because she had not been disciplined for past abuses, she continued the same conduct, resulting in harm to JC.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

129.    The Board of Education was on notice of these failures of official policy and training from the 2009 CBS investigative report, from its own internal data on corporal punishment allegations/investigations/discipline, from individual incidents, and from other sources.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no

response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

130.    The Board of Education's failure to hold accountable CPS teachers and staff who use unreasonable or excessive corporal punishment against students has resulted in a widespread, de facto City policy and practice of using unreasonable force against children in grades K- 8 in public schools in Chicago, such as George A. Tilton Elementary School. The excessive force used against JC was an example of and the result of this *de facto* policy.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

131.    Through its failure to hold accountable teachers who use unreasonable or excessive force against students, the Board of Education has led CPS teachers and staff like Ms. Haynes to be confident that their actions in this regard are acceptable and will not be challenged, investigated or meaningfully disciplined by the Board of Education. These past failures directly authorized, encouraged and emboldened Ms. Haynes' conduct against JC, providing her a general license to threaten and/or use unreasonable or excessive corporal punishment against her students whenever it suited her.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

132.    Through its long-standing failure to hold accountable teachers and staff who unreasonably or excessively corporally punish students in grades K – 8, final City of Chicago policy-makers – including the Chicago Board of Education, the Mayor, and the Chicago City

Council – condoned, approved, facilitated, encouraged and perpetuated a *de facto* City policy and practice of unreasonable or excessive corporal punishment against CPS students.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

133.    By means of its pervasive customs and practices above and its failures, after notice, to remedy teachers' and staff's use of unreasonable or excessive corporal punishment against students in grades K - 8, defendant Chicago Board of Education has manifested and manifests deliberate indifference to the deprivation of JC's constitutional rights.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

134.    One or more of these five interrelated, polices, practices and customs collectively, directly and proximately caused the violations of JC's constitutional rights set forth above and below and the resulting injuries, such that the Chicago Board of Education is liable for Ms. Haynes' use of unreasonable excessive force and corporal punishment against JC.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

### The Chicago Board of Education's <u>De Facto</u> Policies Resulted in Violations of JC's Constitutional Right to be Free of Unnecessary or Excessive Force

135.    Ms. Haynes' conduct toward JC constituted excessive force, in violation of his rights under the Fourth and Fourteenth Amendments to the U. S. Constitution.

**ANSWER:**    Defendant denies ever assaulting JC.

136.    Under the circumstances, Ms. Hayne's use of force against JC was totally unreasonable.

**ANSWER:**    Defendant denies ever assaulting JC.

137.    Ms. Haynes also failed to intervene to stop the unreasonable or excessive corporal punishment of JC by Ms Tyler.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

138.    Ms. Haynes' misconduct was objectively unreasonable and was undertaken intentionally with willful indifference to JC's constitutional rights.

**ANSWER:**    Defendant denies ever assaulting JC.

139.    Her misconduct was undertaken with malice, willfulness, and recklessness indifference to the rights of others.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

140.    Her misconduct was undertaken pursuant to and as the direct and proximate result of the Defendant Chicago Board of Education's widespread practices and customs, as set forth above, such that defendant Chicago Board of Education is liable for Ms. Haynes' conduct toward JC.

**ANSWER:**    Defendant denies ever assaulting JC.

141.    As the direct and proximate result of Ms. Haynes' misconduct, plaintiff JC has suffered and continues to suffer severe, long-term emotional and mental distress and trauma, including but not limited to lasting or permanent PTSD.

**ANSWER:**    Defendant denies ever assaulting JC.

142.    Ms. Haynes had a reasonable opportunity to prevent or stop the violations of JC's constitutional rights but stood by and failed to take any action.

**ANSWER:**     Defendant denies ever assaulting JC.

143.     Her inaction in this respect was objectively unreasonable and undertaken intentionally, with malice and reckless indifference to JC's constitutional rights.

**ANSWER:**     Defendant denies ever assaulting JC.

144.     As set forth above, Ms. Haynes' misconduct was undertaken pursuant to the long-standing and pervasive practices and customs of defendant Chicago Board of Education, such that the Board of Education is also liable for Ms. Haynes' failure to intervene. As the direct and proximate result of her misconduct, JC suffered and continues to suffer injury and harm.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

## COUNT II – 42 U. S. C. § 1983 – VIOLATION OF SUBSTANTIVE CONSTITUTIONAL RIGHTS/EXCESSIVE FORCE/EXCESSIVE COPORAL [sic] PUNISHMENT

145.     Plaintiffs re-allege and incorporate paragraphs 1-123 as if fully stated herein. This count is against defendant Kristen A. Haynes.

**ANSWER:**     The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant restates and re-alleges each of its responses to the preceding paragraphs of the Complaint as though fully set forth herein. Defendant denies ever assaulting JC.

146.     Acting under color of law and within the scope of her employment with the Chicago Board of Education, Defendant Haynes subjected plaintiff or knowingly caused him to be subjected JC to objectively unreasonable and excessive force and/or objectively unreasonable and excessive corporal punishment that violated his Constitutional rights under the Fourth and Fourteenth Amendments.

**ANSWER:**     The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies ever assaulting JC.

31

147.     In addition or in the alternative, Ms. Haynes failed to intervene to stop Ms. Tyler from violating JC's rights when she had a reasonable opportunity to do so.

**ANSWER:**     The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies ever assaulting JC.

148.     The misconduct described above was objectively unreasonable under the circumstances then existing and apparent, and was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:**     The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies ever assaulting JC.

149.     As a result of this misconduct, plaintiff JC suffered the physical, psychological, and emotional pain and injuries set forth above.

**ANSWER:**     The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies ever assaulting JC.

### COUNT III – 42 U. S. C. § 1983 - VIOLATION OF SUBSTANTIVE CONSITUTIONAL RIGHTS CONDUCT THAT SHOCKS THE CONSCIENCE

150.     Plaintiffs re-allege and incorporate paragraphs 1-123 as if fully stated herein. This count is against defendant Kristen A. Haynes.

**ANSWER:**     The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant restates and re-alleges each of its responses to the preceding paragraphs of the Complaint as though fully set forth herein. Defendant denies ever assaulting JC.

151.     Defendant Haynes' abuse and neglect of JC was so malfeasant that it shocks the conscience and violates his constitutional rights.

**ANSWER:**     The allegations in this paragraph are not directed toward Defendant; therefore, no

response is required. To the extent a response is required, Defendant denies ever assaulting JC.

152.    Plaintiff Asia Gaines has been deeply injured as well. She has to live with the knowledge that her young son was subjected to abuse, that she was powerless to protect him, and that he now suffers the symptoms of severe PTSD.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

153.    Ms. Gaines has also sustained economic injuries due to the time and expense now required by her son's medical and psychological care stemming from defendants' conduct.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

154.    The misconduct described herein was objectively unreasonable, and undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

## COUNT IV – ASSAULT – ILLINOIS STATE LAW

155.    Plaintiffs re-allege and incorporate paragraphs 1 – 123 above in this count. Plaintiffs assert this claim against defendants Kristen Haynes, the Chicago Board of Education, and Juanita Tyler.

**ANSWER:**    Defendant restates and re-alleges each of its responses to the preceding paragraphs of the Complaint as though fully set forth herein. Defendant denies ever assaulting JC.

156.    As described above, the conduct of defendant Tyler and the conduct of defendant

33

Haynes, who acted under color of law and within the scope of her employment with defendant Chicago Board of Education, each created reasonable apprehensions in plaintiff JC of immediate, harmful contact to his body.

**ANSWER:**  Defendant denies the allegations contained in this paragraph.

157.    Defendants intended to bring about reasonable apprehensions of unjustified, immanent harmful contact in plaintiff JC or knew that their actions would do so.

**ANSWER:**  Defendant denies the allegations contained in this paragraph.

158.    Plaintiff JC suffered injuries as the result of defendants' actions, including a reasonable apprehension of bodily harm, physical and emotional pain and injuries.

**ANSWER:**  Defendant denies the allegations contained in this paragraph.

159.    Defendants' actions were the direct and proximate cause of plaintiffs' injuries.

**ANSWER:**  Defendant denies the allegations contained in this paragraph.

160.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfully and wantonly, and/or with reckless and/or willful indifference to plaintiffs' rights.

**ANSWER:**  Defendant denies the allegations contained in this paragraph.

## COUNT V – BATTERY – ILLINOIS STATE LAW

161.    Plaintiffs re-allege and incorporate paragraphs 1 – 123 above in this count. Plaintiffs assert this claim against defendants Kristen Haynes, the Chicago Board of Education, and Juanita Tyler.

**ANSWER:**  Defendant restates and re-alleges each of its responses to the preceding paragraphs of the Complaint as though fully set forth herein. Defendant denies ever assaulting JC.

162.    In the manner set forth above, the conduct of defendant Tyler and the conduct of defendant Haynes, who acted under color of law and within the scope of her employment with the

Chicago Board of Education, constituted unauthorized, unjustified, direct, physical contact to plaintiff's body that was harmful and offensive. Neither plaintiff JC nor his parents consented to this contact.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

163.    Defendants' contact was undertaken willfully and wantonly.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

164.    The misconduct alleged in this count was objectively unreasonable and was undertaken intentionally and with malice and/or with reckless and/or willful indifference to plaintiff's rights.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

165.    Defendants' misconduct alleged in this count was undertaken with an actual or deliberate intention to harm and with an utter indifference to or conscious disregard for the safety of others.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

166.    Defendants intended to cause plaintiff harm in that they knew with substantial certainty that harm would result to plaintiff from their actions.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

167.    As a direct and proximate result of defendants' misconduct described in this count, plaintiff JC sustained serious harm, including but not limited to a reasonable apprehension of bodily harm, physical and emotional pain and injuries.

**ANSWER:**     Defendant denies the allegations contained in this paragraph.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – ILLINOIS STATE LAW

168.    Plaintiffs re-allege and incorporate paragraphs 1 – 123 above in this count.

35

Plaintiffs assert this claim against defendants Kristen Haynes, the Chicago Board of Education, and Juanita Tyler.

**ANSWER:**    Defendant restates and re-alleges each of its responses to the preceding paragraphs of the Complaint as though fully set forth herein. Defendant denies ever assaulting JC.

169.    The actions, omissions and conduct of defendant set forth above – including but not limited to soliciting an unauthorized adult who was not JC's parent to enter Tilton Elementary School and assisting that person in beating JC with belts - were extreme and outrageous and exceeded all bounds of human decency.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

170.    Defendants' actions and omissions were undertaken with the intent to inflict and cause severe emotional distress to plaintiffs, with the knowledge of the high probability that this conduct would cause such distress or in reckless disregard of the probability that their conduct would cause such distress.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

171.    Defendants, who occupied positions of special trust and authority, knew, had reason to know or believed that plaintiffs, especially 9-year-old JC, was especially vulnerable and fragile.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

172.    As a direct and proximate result of defendants' extreme and outrageous conduct, plaintiff JC suffered and continues to suffer harm, including physical injury and severe emotional distress and trauma.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

173.    Defendants' conduct was undertaken willfully and wantonly. Their actions were objectively unreasonable and were undertaken intentionally and with malice and/or with reckless

and/or willful indifference to plaintiff's constitutional rights.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

174.    Defendants' misconduct alleged in this count was undertaken with an actual or deliberate intention to harm and with an utter indifference to or conscious disregard for the safety of others.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

## COUNT VII - AIDING AND ABETTING – ILLINOIS STATE LAW

175.    Plaintiffs re-allege and incorporate paragraphs 1-105, 110-123, and 155-174 above. In the alternative to their agency theory, plaintiffs assert this claim against defendants Kristen Haynes and the Chicago Board of Education.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant restates and re-alleges each of its responses to the preceding paragraphs of the Complaint as though fully set forth herein. Defendant denies ever assaulting JC.

176.    Ms. Tyler performed a wrongful act that caused an injury when she intentionally and unreasonably beat JC with belts in school.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

177.    Ms. Haynes, acting under color of law and within the scope of her employment with the Chicago Board of Education, substantially assisted Ms. Tyler in carrying out the wrongful act. She invited and arranged for her to come to her classroom at the school at a date and time certain for this purpose. She let her into the school or facilitated her entry. She provided the belts with which he was beaten. She helped Ms. Tyler drag or carry JC to the boys' bathroom and left her alone with him.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

178.    At the time she provided assistance to Ms. Tyler, Ms. Haynes was aware of her role as being a part of the wrongful act. As JC's teacher with responsibility for the safety and discipline of JC during school, Ms. Haynes nevertheless contacted Ms. Tyler and requested that she discipline him.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

179.    Ms. Haynes knowingly assisted Ms. Tyler in carrying out the wrongful act when she provided Ms. Tyler with the belts, helped her drag him to the boys' bathroom, left her alone with him in the bathroom, accepted JC back into the classroom from Ms. Tyler after she beat him, and threatened JC that Ms. Tyler would return again later that day.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

180.    As a direct and proximate result of Ms. Haynes' actions, plaintiff JC suffered and continues to suffer harm, including physical injury and severe, psychological and emotional distress and trauma.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

181.    Defendants' conduct was undertaken willfully and wantonly. Their actions were objectively unreasonable and were undertaken intentionally and with malice and/or with reckless and/or willful indifference to plaintiff's constitutional rights.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations

contained in this paragraph.

182.    Defendants' misconduct alleged in this count was undertaken with an actual or deliberate intention to harm and with an utter indifference to or conscious disregard for the safety of others.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

## COUNT VIII – CIVIL CONSPIRACY – ILLINOIS STATE LAW

183.    Plaintiffs re-allege and incorporate paragraphs 1-105, 110-123, and 155-174 above. In the alternative to their agency theory, plaintiffs assert this claim against defendants Juanita Tyler, Kristen Haynes and the Chicago Board of Education.

**ANSWER:**    Defendant restates and re-alleges each of its responses to the preceding paragraphs of the Complaint as though fully set forth herein. Defendant denies ever assaulting JC.

184.    Ms. Haynes, acting under color of law and within the scope of her employment with Defendant Chicago Board of Education, and Ms. Tyler entered into an agreement to use unreasonable physical force to discipline JC at his school.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

185.    They joined together, in a combination they coordinated in advance over Facebook social media and over the telephone, and took concerted actions, such as meeting at Tilton Elementary School at a certain time and waiting together to accost JC when he entered the classroom, for the purpose of using unreasonable physical force to discipline JC.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

186.    Ms. Haynes and Ms. Tyler knowingly and voluntarily participated in this common scheme.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

187.    This was an unlawful purpose in that they planned and intended to discipline him with unreasonable force, in violation of the law. Neither the entry of Ms. Tyler into the building for purposes of having contact with JC nor her abuse of JC was authorized by JC's parents.

**ANSWER:**    Defendant denies the allegations contained in this paragraph. JC's father, Joseph Champ, expressly requested that Defendant come to Tilton Elementary on the morning of September 20, 2018 to speak with JC.

188.    In the alternative, Ms. Haynes and Ms. Tyler had a lawful purpose, school discipline, but the means they used to achieve their purpose (i.e., their actions) went beyond the bounds of lawful activity.

**ANSWER:**    Defendant denies the allegations contained in this paragraph. Further, the conduct alleged in this paragraph is insufficient to state a claim of conspiracy to assault JC, as it does not allege a plan to discipline JC with physical force.

189.    In furtherance of their unlawful purpose and/or unlawful means, Ms. Haynes and Ms. Tyler committed multiple unlawful and/or tortious acts when Ms. Tyler's presence and purpose in the school had not been authorized by JC's parents, JC's parents were never notified, and the beating itself was unreasonable and tortious.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

190.    Defendants' conduct was undertaken willfully and wantonly. Their actions were objectively unreasonable and were undertaken intentionally and with malice and/or with reckless and/or willful indifference to plaintiff's constitutional rights.

**ANSWER:**    Defendant denies the allegations contained in this paragraph.

191.    Defendants' conduct was undertaken with an actual or deliberate intention to harm

40

and with an utter indifference to or conscious disregard for the safety of others.

**ANSWER:**   Defendant denies the allegations contained in this paragraph.

### COUNT IX – *RESPONDEAT SUPERIOR* – ILLINOIS STATE LAW

192.    Plaintiffs re-allege paragraphs 1-123 and 155-191 above and incorporate them into this count. Plaintiffs assert this claim against defendant Chicago Board of Education.

**ANSWER:**   The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant restates and re-alleges each of its responses to the preceding paragraphs of the Complaint as though fully set forth herein. Defendant denies ever assaulting JC.

193.    In committing the acts and omissions alleged above, as alleged above defendant Tyler acted at the behest of defendant Haynes who was at all relevant times was acting within the scope of her employment the Chicago Board of Education.

**ANSWER:**   The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies ever assaulting JC.

194.    Defendant Chicago Board of Education is, therefore, liable as principal for all common law torts committed by its agents within the scope of their employment.

**ANSWER:**   The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

### COUNT X – INDEMNIFICATION – ILLINOIS STATE LAW

195.    Plaintiffs re-allege paragraphs 1-123 and 155-174 above and incorporate them into this count. Plaintiffs assert this count against defendant Chicago Board of Education.

**ANSWER:**   The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. To the extent a response is required, Defendant restates and re-alleges each

of its responses to the preceding paragraphs of the Complaint as though fully set forth herein. Defendant denies ever assaulting JC.

196.    Defendant Chicago Board of Education was at all times relevant to this action the employer of defendant Haynes.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. Defendant denies ever assaulting JC.

197.    Defendant Haynes committed the acts alleged above in the course and within the scope of her employment with the Chicago Board of Education.

**ANSWER:**    The allegations in this paragraph are not directed toward Defendant; therefore, no response is required. Defendant denies ever assaulting JC.

198.    Illinois law, 745 ILCS 10/9-102, directs public entities to pay any common law tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:**    The allegations in this paragraph are legal conclusions to which no response is required. Defendant denies ever assaulting JC.

199.    If Ms. Haynes is found liable for the claims alleged in this complaint, plaintiffs are entitled to indemnification for any compensatory damages, punitive damages, and attorney's fees and costs that are awarded.

**ANSWER:**    The allegations in this paragraph are legal conclusions to which no response is required. Defendant denies ever assaulting JC.

## RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF

To the extent that a response to Plaintiff's Prayer for Relief is required, Defendant denies that Plaintiff is entitled to any form of relief whatsoever, whether in the form requested in the Complaint or otherwise.

**FIRST DEFENSE**

200.    Plaintiff's damages, if any, were caused by the acts or omissions of a third party over whom Defendant Tyler had no control and for whose acts Defendant Tyler is not responsible.

**SECOND DEFENSE**

201.    Plaintiff is not entitled to attorney's fees for state law claims. *See Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.*, 882 F.2d 221, 227 (7th Cir. 1989); *Kerns v. Engelke*, 76 Ill.2d 154, 166; 390 N.E.2d 859, 865 (1979); *Miller v. Pollution Control Bd.*, 267 Ill. App. 3d 160, 171; 642 N.E.2d 475, 485 (4th Dist. 1994).

**RESERVATION OF ALL AFFIRMATIVE DEFENSES**

Defendant hereby gives notice that it reserves the right to supplement, amend, or modify its Answer to rely upon any other matter constituting an avoidance or affirmative defense, including but not limited to estoppel, waiver, unclean hands, and other equitable defenses, as set forth in Rule 8(c) of the Federal Rules of Civil Procedure, as may be permitted by the Court or the Federal Rules of Civil Procedure, as its investigation continues, and as discovery may require.

**DEFENDANT'S PRAYER FOR RELIEF**

WHEREFORE, Defendant, Juanita Tyler, prays for relief and judgment, as follows:

A.    That the Complaint be dismissed with prejudice;

B.    That Plaintiff take nothing by reason of the Complaint;

C.    That judgment be rendered in favor of Defendants and against Plaintiff with Respect to all Counts in the Complaint;

D.    That Juanita Tyler be awarded her cost of suit and reasonable attorneys' fees incurred in defense of this action to the fullest extent allowed by law; and

E.    For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendant hereby demands

a trial by jury of all issues so triable.


Dated: September 20, 2023        Respectfully submitted,

By:   *Andrew Rima*

Andrew J. Rima (IL 6302849)

GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP

200 South Wacker Drive, 22nd Floor

Chicago, IL 60606

(312) 881-5943

arima@goldmanismail.com

*Counsel for Defendant Juanita Tyler*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2023, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

*/s/ Andrew Rima*